REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 01092

September Term, 2014

MARIA SIMBAINA

v.

SEGUNDO BUNAY

Zarnoch,
Arthur,
Sonner, Andrew L.
(Retired, Specially Assigned),

JJ.

Opinion by Zarnoch, J.

Filed: February 3, 2015

This case raises the question of whether, in an ordinary custody proceeding, a circuit court must enter factual findings under 8 U.S.C. § 1101(a)(27)(J) regarding a child's potential status as a "special immigrant juvenile" (SIJ), if the issue is properly before the court. We answer this question in the affirmative and remand this case to the Circuit Court for Baltimore City to make the required findings under federal law.

## FACTS AND LEGAL PROCEEDINGS[1]

Appellant, Maria Simbaina and Appellee, Segundo Bunay were married in a civil ceremony in Washington D.C. on March 24, 2010, after being together since 1998. Both Simbaina and Bunay are residents of Baltimore, Maryland. The parties have three children, Nathaly, Ingrid and Jocelyn. Nathaly was born on June 1, 2000 and is a citizen of Ecuador, where she resided with her maternal grandparents until 2010. She first came to the United States in May 2010 and has resided with Simbaina since that time. Nathaly is presently an undocumented alien. Bunay came to the United States when Nathaly was three months old and has not had a consistent relationship with her. Since Nathaly arrived in the United States, Simbaina has been her sole caretaker.

Simbaina and Bunay separated on April 17, 2012. On February 13, 2013, Bunay filed a Complaint for Custody. In response, Simbaina filed an Answer and Counter-Complaint for Divorce and Custody or, in the Alternative, Limited Divorce on March 21, 2013. Simbaina then amended her complaint on November 7, 2013, and Bunay answered on January 7, 2014. In both her original and amended complaints, Simbaina requested that

---

[1] Bunay did not file a brief with this Court so our factual discussion was gathered from Simbaina's brief and the information contained in the record in the circuit court.

the court "enter an Order finding that it is not in Nathaly's best interest to return to her home country and reunification with [Bunay] is not viable due to abuse[,] neglect[,] or abandonment."

A hearing was held in the Circuit Court for Baltimore City on April 22, 2014. During the hearing, the court heard from both Simbaina and a corroborating witness, Maria Loja, who testified that Simbaina and Bunay had been separated for two years and that there was no hope of reconciliation between the pair. At the hearing, the custody of the couple's three minor children was addressed. Bunay agreed that Simbaina could have full legal and physical custody of Nathaly, but requested joint custody of Ingrid and Jocelyn. During this hearing, Simbaina presented a consent draft custody order to the court, which "included Special Immigrant Juvenile findings and awarded [Simbaina] physical and legal custody of Nathaly." Simbaina wanted the court to make factual findings so that Nathaly could remain in the United States as a permanent resident under SIJ status, which requires an order from the circuit court.[2] The circuit court explained that any immigration issues would not be discussed because they were not properly pled. Additionally, no testimony

---

[2] According to Simbaina's brief, Nathaly is currently in deportation proceedings. At oral argument, in response to a question from this Court, Simbaina's counsel further explained that these proceedings have been delayed pending our decision in this case. On November 20, 2014, President Obama addressed the Nation on his Immigration Accountability Executive actions. The President's actions will allow undocumented immigrants the ability to remain in the United States without fear of deportation, focusing efforts on deporting "[c]riminals, not children." President Obama's recent actions, assuming they apply to an immigrant in Nathaly's situation, do not moot this case. These executive actions do not change the implications or benefits of SIJ status, which offers minors the ability to file for permanent residence, not just to avoid deportation.

was heard on Simbaina's request because, as the court said, "there is a pleading that needs to be filed with the court concerning any immigration issues." The circuit judge suggested that this pleading was a "petition for some type of guardianship."

On April 24, 2014, the circuit court entered a judgment granting an absolute divorce, but did not include any factual findings on the SIJ status of Nathaly. On May 2, 2014, Simbaina filed a Motion to Alter or Amend and a Motion for New Trial, requesting that the circuit court amend its judgment of absolute divorce to include the requested SIJ factual findings. On July 2, 2014, both of these motions were denied without a hearing. Simbaina timely noted her appeal.

## QUESTIONS PRESENTED[3]

Appellant presents three questions for our review, which we have consolidated into the following question:

> Did the circuit court err when it failed to make Special Immigrant Juvenile factual findings during the divorce and custody proceedings?

---

[3] Simbaina's original questions as presented to this Court were:

1. Did the trial judge err as a matter of law in refusing to enter special immigrant juvenile findings as part of the custody determination?

2. Is the trial judge's refusal to make special immigrant juvenile findings inconsistent with Congressional intent?

3. Did the trial judge abuse her discretion in denying the Motion to Alter or Amend and the Motion for New Trial without providing any basis for the denials?

Our answer is yes. Thus, we reverse and remand for a hearing and for the entry of factual findings related to Nathaly's SIJ status.

## STANDARD OF REVIEW

Typically, we review a circuit court's decision to deny a motion for a new trial under an abuse of discretion standard. *See Mason v. Lynch*, 151 Md. App. 17, 28 (2003), *aff'd,* 388 Md. 37 (2005) ("It is our job to review a trial court's denial of a motion for new trial using an abuse of discretion standard."). However, while the circuit court "is granted broad discretion in granting or denying equitable relief, where an order involves an interpretation and application of Maryland constitutional, statutory or case law, our Court must determine whether the trial court's conclusions are 'legally correct' under a *de novo* standard of review." *Schisler v. State*, 394 Md. 519, 535 (2006) (Citations omitted). This case primarily involves an interpretation of State law and a federal statute and regulations, so we must decide if the circuit court's decision denying the request for SIJ factual findings was "legally correct." *See Nesbit v. Gov't Emps. Ins. Co.*, 382 Md. 65, 72 (2004).

## DISCUSSION

### I.    History and Interpretation of SIJ Statute

The Immigration and Nationality Act of 1990, which established the initial eligibility requirements for SIJ status, was enacted "to protect abused, neglected, or abandoned children who, with their families, illegally entered the United States." *Yeboah v. U.S. Dep't of Justice*, 345 F.3d 216, 221 (3d Cir. 2003). The law "provided an alternative to deportation for these children" by allowing them to seek SIJ status. *Id.* The statute creates "a special circumstance where a State juvenile court is charged with addressing an

4

issue relevant only to federal immigration law." *H.S.P. v. J.K.*, 87 A.3d 255, 259 (N.J. Super. Ct. App. Div. 2014) (Citations and quotations omitted). To "be eligible for SIJ classification, 8 U.S.C. § 1101(a)(27)(J) requires that a State court make an SIJ-predicate order." *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 253 (C.D. Cal. 2008).

The initial provisions were amended in 1997 to curb abuse "by juveniles entering the United States as visiting students." *Yeboah*, 345 F.3d at 221. The 1997 amendments "modified the [SIJ] definition to include an immigrant whom a juvenile court[4] had legally committed to, or placed under the custody of, an agency or department of a State, and added the requirement that the finding of eligibility for long-term foster care be due to abuse, neglect, or abandonment." *Marcelina M.-G. v. Israel S.*, 112 A.D.3d 100, 107 (N.Y. App. Div. 2013) (Quotations omitted).

The requirements were further amended in 2008 to expand "eligibility to include those immigrant children who had been placed in the custody of an individual or entity appointed by a state or juvenile court." *Id.* at 108. (Citations omitted). A precondition of long-term foster care was removed and replaced with the "requirement that the juvenile court find that reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law." *Id.* (Quotations omitted).

The current law still requires that the immigrant child obtain "an order from a state juvenile court making findings that the juvenile satisfies certain criteria." *Id.* at 107

---

[4] As discussed below, the words "juvenile court" bear a different meaning from that found in Maryland law.

(Citations omitted). Once a "state court makes an SIJ-predicate order, a child may file with CIS [U.S. Citizenship & Immigration Services] for SIJ-status using an I–360 petition. A child . . . granted SIJ status may then apply for adjustment to lawful permanent resident status under 8 U.S.C. § 1255." *Perez-Olano*, 248 F.R.D. at 253.

## II. Separation of Powers / State Regulation of Immigration Concerns

Because the SIJ statute imposes a rather extraordinary duty on a State court, we pause to consider two possible objections to such authority: 1) whether the statute imposes a nonjudicial duty on a Maryland court in violation of Separation of Powers? and 2) whether a Maryland court engages in impermissible State regulation of immigration by making actual findings about a child's SIJ status?

The Federal Immigration and Nationality Act, 8 U.S.C. § 1101(a)(27)(J), requires that a State "juvenile court" make specific factual findings before a minor can petition the United States Citizenship and Immigration Services for SIJ status. *See also* 8 C.F.R. § 204.11(b) ("An alien may not be classified as a SIJ unless the alien is the beneficiary of an approved petition to classify an alien as a special immigrant."). For purposes of § 1101 (a)(27)(J), a minor child may be considered for SIJ status if he or she is present in the United States, unmarried, under the age of 21, and

> (i) . . . has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law [and]

6

(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence.

Arguably, the federal statute directs our State courts to perform a "nonjudicial function" by issuing advisory factual findings with regard to a child's SIJ status. If a Maryland statute required such a duty of a State court, it would violate Article 8 of the Declaration of Rights of the Maryland Constitution.[5]  The Court of Appeals has held that "a court has no jurisdiction to perform a nonjudicial function, and any enactment which attempts to confer such a function on a court is unconstitutional." *Duffy v. Conaway*, 295 Md. 242, 254 (1983) (Citations omitted).   In that case, the circuit court's role was "limited to gathering testimony, making findings of fact, and transmitting the testimony and findings to another governmental entity." *Id.*  A State law requiring the court to make these types of determinations was found to violate Article 8, a violation that divested the lower court of jurisdiction over the case.  *Id.*[6]

The federal statute directs the circuit court to enter factual findings that are advisory to a federal agency determination, but we do not believe that the statute offends State separation of powers.   The federal government "has exclusive jurisdiction with respect to immigration [but] state juvenile courts play an important and indispensable role in the SIJ application process." *Leslie H. v. Superior Court*, 168 Cal. Rptr. 3d 729, 735 (Cal. Ct.

---

[5] Article 8 provides: "That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other."

[6] In *Duffy*, this issue was raised *sua sponte* by the Court.  295 Md. at 254.

App. 2014) (Citations and quotations omitted). The federal government delegated this power to State juvenile courts because these courts are "the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests." *Id.* (Citations omitted). "Congress has plenary power over immigration [and] State courts have general jurisdiction over child welfare matters." *Perez-Olano*, 248 F.R.D. at 265 (Internal citations omitted). Therefore, the federal government can delegate specific powers to the States to make determinations helpful to determining the immigration status of certain individuals, including the SIJ status. Moreover, because federal law imposes the duty to make SIJ findings on a Maryland court, any claim of impermissible imposition of nonjudicial duties or of a State separation of powers violation would be trumped by the Supremacy Clause of the U.S. Constitution, Article VI, and the similar federal supremacy obligation found in Article 2 of our own Declaration of Rights.[7]

Nor do we believe the federal directive to State courts to make SIJ findings runs afoul of Supreme Court cases invalidating a State's attempt to regulate immigration. *See Arizona v. United States*, 132 S.Ct. 2492 (2012) and *DeCanas v. Bica*, 424 U.S. 351 (1976).

---

[7] Article 2 provides:

> The Constitution of the United States, and the Laws made, or which shall be made, in pursuance thereof, and all Treaties made, or which shall be made, under the authority of the United States, are, and shall be the Supreme Law of the State; and the Judges of this State, and all the People of this State, are, and shall be bound thereby; anything in the Constitution or Law of this State to the contrary notwithstanding.

First, it is important to note that the State court is not "rendering an immigration determination," because the ultimate decision regarding the child's immigration status "rests with the federal government." *Marcelina M.-G.*, 112 A.D.3d at 109. Secondly, the State is not acting unilaterally on the basis of State authority. Rather, it is federal law that imposes this duty on State courts. Thus, we conclude that State action under 8 U.S.C. § 1101(a)(27)(J) is not a prohibited regulation of immigration.[8]

## III. Circuit Court Jurisdiction over SIJ status

The circuit court erroneously concluded that the SIJ factual findings could only be entered after a separate guardianship hearing. The circuit court reasoned that Nathaly would be eligible to file for SIJ status after filing a separate petition for guardianship[9] under the United States Immigration and Nationality Act, explaining that the Clerk's office "could assist you with whatever the pleading that needs to be done, because it's a whole hearing, it's a whole group of factors that the Court has to review." The circuit court was correct that the determination of SIJ status requires the establishment of certain factors, but

---

[8] We have not been asked nor do we address *sua sponte* any question of whether the SIJ statute is inconsistent with the 10th Amendment to the U.S. Constitution. *See Printz v. U.S.*, 521 U.S. 898 (1997).

[9] We will not address any hypothetical question as to the propriety of a guardianship proceeding in this case where the mother has custody of the child. *See In re Guardianship of Zealand W.*, 220 Md. App. 66, 85-86 (2014) (holding that a circuit court would not have the authority to hear a guardianship petition when one parent still maintains parental rights).

9

incorrectly concluded that it must be done exclusively in a separate guardianship proceeding.

Although 8 U.S.C. § 1101(a)(27)(J) does not define the term, "juvenile court," applicable federal regulations do. Under these regulations, a juvenile court is defined as "a court located in the United States having jurisdiction under state law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a). The exact makeup of these "juvenile courts" varies from state to state. In California, a superior court sitting as a probate court was determined to have the authorization to make SIJ findings. *B.F. v. Superior Court*, 143 Cal. Rptr. 3d 730, 733-34 (Cal. Ct. App. 2012). The California appellate court applied the broad definition of "juvenile courts" over the stricter California provisions since "there is no distinct or separate jurisdiction between a court assigned to the juvenile department and a court assigned to the probate department." *Id.* at 735. Because the California Probate Code "authorizes the superior court to make judicial determinations about the care and custody of juveniles," a court sitting in this capacity would fit the requirements to be considered a juvenile court under the federal definition. *Id.*

Under 8 C.F.R. § 204.11(a), jurisdiction specifically extends to any court that has "jurisdiction under state law to make judicial determinations about the custody and care of juveniles." While they may split on the interpretation of the provisions of § 1101(a)(27)(J), courts around the country hear SIJ evidence in a variety of settings, including custody proceedings, adoption petitions and probate issues. A New York court held that a juvenile court hearing a guardianship petition, a petition for sole custody, and a motion for special

findings order, should also make special findings under 8 U.S.C. § 1101(a)(27)(J). *Marcelina M.-G*, 112 A.D.3d at 106. In *C.G.H.*, the District of Columbia Court of Appeals concluded that in a proceeding for adoption, the Family Court should have issued SIJ findings "simultaneously with the entrance of the adoption decree." *In re C.G.H.*, 75 A.3d 166, 169 (D.C. 2013). There was no custody dispute in that case, but the appeals court determined that the family court should have heard the SIJ issue as it was raised and presented to it. *Id.* at 170. There is no discernible distinction between these different types of cases. All seek to make decisions regarding a minor's care and custody with the child's best interest in mind.

In some instances in the out of state cases, the SIJ factual findings are raised solely by motion, independent of any custody or guardianship proceeding. In a Nebraska case, the SIJ issue was raised after an initial filing involving the minor's "two charges of being a minor in possession of alcohol." *In re Erick M.*, 820 N.W.2d 639, 642 (Neb. 2012). The question was raised by a separate motion. *Id.* at 641. No claim for custody or guardianship was presented, yet the trial court was still held to have the authority to hear the SIJ issue. *Id.* at 642. The Supreme Court of Nebraska concluded "that Congress wanted to give state courts and federal authorities flexibility to consider a juvenile's family circumstances" in making SIJ determinations. *Id.*

The facts of a recent New York case mirror those presented here. The minor's father abandoned her and she was placed in the sole custody of her mother. The family court

11

"granted [the minor's] unopposed petition"[10] after "the mother testified regarding [the minor's] father's abandonment and neglect" but refused to enter "special findings that would allow her to apply [for SIJ status]." *P.E.A. v. A.G.G.*, 111 A.D.3d 619, 619-20 (N.Y. App. Div. 2013). The case brought before the New York Family Court was an ordinary child custody proceeding, not a separate guardianship hearing. On appeal, the New York Supreme Court concluded that by placing the child in the mother's custody, the child was "legally committed to, or placed under the custody of . . . an individual or entity appointed by a State or juvenile court" and that the family court should have made SIJ findings. *Id.* at 620.

The federal statute places no restriction on what is an appropriate proceeding or how these SIJ factual findings should be made. The only limitation is that the court entering the findings fit the federal definition of a "juvenile court." Any relevant limitations will arise from State law. Pursuant to the Maryland Code, an equity court has jurisdiction over "custody or guardianship of a child." Md. Code (1984, 2012 Repl. Vol., 2014 Supp.),

---

[10]New York courts have held that there is no difference between custody proceedings that are contested or those filed unopposed:

> Unopposed petitions for custody brought by a natural parent have been granted. There is no basis for treating an unopposed guardianship petition more restrictively than an unopposed custody petition. The distinctions between guardianship and custody are elusive, as both forms of legal responsibility to a child have very similar attributes.

*In re Marisol N.H.*, 115 A.D.3d 185, 190 (N.Y. App. Div. 2014) (Internal citations omitted).

Family Law Article ("FL"), § 1-201(b)(5).[11] The circuit courts "are the highest common-law and equity courts of record exercising original jurisdiction within the State." Md. Code (1973, 2013 Repl. Vol.), Courts & Judicial Proceedings Article ("CJP"), § 1-501. Therefore, the circuit courts would be considered juvenile courts under the broad federal definition and have jurisdiction to hear evidence relating to SIJ status.[12]

---

[11] Subsequent to the filing of this case, this State law was amended to specifically confer on an equity court jurisdiction over:

> custody or guardianship of an immigrant child pursuant to a motion for Special Immigrant Juvenile factual findings requesting a determination that the child was abused, neglected, or abandoned before the age of 18 years for purposes of § 101(a)(27)(J) of the federal Immigration and Nationality Act.

FL § 1-201(b)(10). This change was effective October 1, 2014. *See* Chapter 96, *Laws of 2014.*

[12] A provision of § 1101(a)(27)(J) provides that specific consent is required for a state juvenile court to obtain jurisdiction over the minor when a juvenile is in the custody of the Department of Health and Human Services (DHHS). *See* 8 U.S.C. § 1101(a)(27)(J)(iii). As noted by *F.L.M. v. Dep't of Children & Families, State of Fla.,* 912 So. 2d 1264, 1267 (Fla. Dist. Ct. App. 2005), "a state court is precluded from declaring dependency without the Attorney General's [now the Secretary of DHHS's] consent only if the Attorney General [now DHHS] has actual or constructive custody of the child." *See* William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 235(d)(1)(B)(ii), 122 Stat. 5044 (2008) (striking Attorney General and replacing it with the Secretary of DHHS).

However, it has been determined that a minor is in "the constructive custody of [DHHS] only when [he or she is] subject to a final order of deportation." *Matter of Perez Quintanilla, Special Immigrant Proceeding* A97 383 010 (June 7, 2007), at 8. Nathaly is currently facing deportation proceedings, but remains in the physical custody of her mother. Thus, Nathaly is not considered to be in constructive custody of DHHS until a final order of deportation is entered. Until that time, the circuit court will continue to have jurisdiction over Nathaly's case.

Here, the circuit court had the authority over Nathaly to make decisions regarding her custody. The circuit court accepted the custody arrangement and awarded Simbaina sole custody of Nathaly, thus making a decision about her "custody and care." The federal government delegated the powers to make initial SIJ factual findings to state juvenile courts because of the expertise that these courts have in issues relating to the care and custody of juveniles. It is clear from cases in other jurisdictions and from relevant provisions of Maryland law that a circuit court hearing an ordinary custody proceeding can enter factual findings relating to SIJ status without requiring a separate filing, such as a petition for guardianship.

## IV. Pleading Requirements

A request for determination of SIJ findings is not subject to a heightened pleading requirement. The federal statute provides no specific pleading requirements, as SIJ factual findings are not a separate cause of action. The circuit court erroneously concluded that these factual findings could only be entered after a separate guardianship hearing, where the issue was pled more specifically than what was done here.

Maryland law only requires that pleadings be "simple, concise, and direct." Md. Rule 2-303(b). There is no requirement aside from pleading facts showing that the pleader is entitled to some form of relief. *Id.* The hearing before the circuit court involved a complaint for an absolute divorce and for a custody determination for three minor children.

14

While Simbaina did not file a separate motion for SIJ factual findings, it is clear from her amended complaint that she sought these additional findings from the court.

In a similar case, the Superior Court of New Jersey heard a custody proceeding under the New Jersey statutes for abused or abandoned children. *D.C. v. A.B.C.*, 8 A.3d 260, 261-62 (N.J. Super. Ct. Ch. Div. 2010). The plaintiff brought a claim for custody "alleging that Paul was abused, neglected, and abandoned by his mother." *Id.* at 261. As a part of this proceeding, the plaintiff only asked the court to make findings that: "1. Reunification of Paul with his mother is not viable due to neglect and abandonment; and 2. It is not in Paul's best interest to be returned to Guatemala, the country of his birth." *Id.*

Analogously, Simbaina requested the same relief from the court, that it "enter an Order finding that it is not in Nathaly's best interest to return to her home country and reunification with [Bunay] is not viable due to abuse[,] neglect[,] or abandonment." Simbaina raised the issue at the hearing, in her Motion to Alter or Amend, and in her Motion for a New Trial, where she specifically raised the SIJ issue and requested factual findings. Her specific request was that the circuit court grant a new trial to allow Nathaly to apply for SIJ status:

> The Circuit Court for Baltimore City is empowered by state and federal law to enter an Order making the required factual findings. . . . Without such factual findings, Nathaly will be unable to seek permanent residences [sic] and will likely be deported or removed from the United States and permanently separated from her mother and siblings.

When pleading this issue before the circuit court, a moving party should ensure that the court is on notice of the request for these factual findings. While a separate motion can be filed, *see Erick M.*, 820 N.W.2d at 641, it is not required by the federal statute. *See*

*D.C.*, 8 A.3d at 261-62.  The essential elements of the court order require that the minor be declared dependent on the juvenile court, that reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, and that "it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence."  8 U.S.C. § 1101(a)(27)(J).  When made clear from the filed pleadings that this determination is part of the requested relief, a separate SIJ motion is not necessary.  Here, the factual findings were part of the requested relief and the repeated oral requests make it clear that the SIJ issue was sufficiently before the court.

Accordingly, the circuit court had jurisdiction over the custody proceedings and should have heard testimony and evidence relating to Nathaly's SIJ status.  Upon remand, the circuit court should evaluate Nathaly's request under the SIJ standards.  The "state court's role in the SIJ process is not to determine worthy candidates for citizenship, but simply to identify abused, neglected, or abandoned alien children under its jurisdiction who cannot reunify with a parent or be safely returned in their best interests to their home country."  *Leslie H.*, 168 Cal. Rptr. 3d at 737.  Therefore, it is incumbent on the circuit court to make its own independent factual findings regarding whether Nathaly fulfills the requirements of § 1101(a)(27(J).

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  COSTS TO BE PAID BY APPELLANT.**

16