In the Matter of the WELFARE OF A.S., Juvenile.

No. A15–1904.

Court of Appeals of Minnesota.

July 5, 2016.

Magdalena B. Metelska, Marcus A. Jarvis, Marcus–Jarvis Law Limited, Brooklyn Park, MN, for appellant A.S.

Lori Swanson, Attorney General, St. Paul, MN; and Michelle M. Zehnder Fischer, Nicollet County Attorney, Mark R. Thompson, Kezia Smith, Assistant County Attorneys, St. Peter, MN, for respondent State of Minnesota.

Considered and decided by WORKE, Presiding Judge; HALBROOKS, Judge; and SMITH, TRACY M., Judge.

## OPINION

SMITH, TRACY M., Judge.

After pleading guilty to underage drinking and driving and being placed on probation with certain conditions for up to 12 months, appellant A.S. moved for findings as a prerequisite to applying for SIJ status. *See* 8 U.S.C. § 1101(a)(27)(J)(2012). The district court found that its jurisdiction over A.S.'s juvenile traffic offense and the court's placement of A.S. on probation does not render A.S. "dependent on a juvenile court" or result in A.S. being "committed to, or placed under the custody of," a state agency or department or an individual or entity for purposes of the federal statute. *See id.* (i). A.S. argues that the district court's decision rests on an erroneous interpretation of the SIJ statute. We affirm.

## FACTS

A.S. was born on September 26, 1997, in Veracruz, Mexico. A.S.'s parents left for the United States when he was five years old, leaving A.S. in Mexico to live with his grandparents and, later, with his older sister. When A.S. was 12, he had to work to help support his family and to buy school supplies. His work included cutting down trees with a machete, which led to frequent injuries requiring medical attention. If A.S. refused to work, his grandparents would punish him. Additionally, A.S.'s work led to him missing school, and he eventually dropped out in the eleventh grade.

A.S.'s relationship with his parents was poor; they would call him from the United States, but he felt "abandoned." A.S.'s parents returned to Mexico when A.S. was 16 years old, but their relationship did not improve. A.S. worked full time, and his parents would "beat [him] about twice per week to discipline [him] or when they were in a bad mood." Eventually, A.S., unaccompanied and with his parents' knowledge, crossed the border into the United States and moved to Minnesota.

In April 2015, at 17 years of age, A.S. was cited for underage drinking and driving, consumption of alcohol by a person under the age of 21, and driving without a valid license. A.S. pleaded guilty to underage drinking and driving—a juvenile traffic offense—and the other charges were dismissed. The district court stayed adjudication and placed A.S. on probation for up to 12 months with the following conditions: (1) no violations of any laws or ordinances, (2) 40 hours of community service, (3) attend a MADD Victim Impact Panel, (4) obey home rules, (5) no use of drugs or alcohol, (6) regularly attend school and obey school rules, and (7) pay a $75 fee, waivable at the probation department's discretion.

A.S. moved for findings that would allow him to apply for SIJ status. The district court found that A.S. is "not dependent upon the [c]ourt, nor has the [c]ourt placed

[A.S.] under the custody of an agency or department of the [s]tate." *See id.* The district court concluded that "merely being placed on probation ... for a traffic offense" does not equate to being placed in the custody of an agency. The district court also found that reunification with A.S.'s parents "is not viable because [A.S.'s] relationship with his parents is very weak." The district court did not find, as the SIJ statute requires, that reunification is not viable due to abuse, neglect, or abandonment. *See id.* (ii).

A.S. appeals.

## ISSUE

Is the requirement that a prospective SIJ-status petitioner "has been declared dependent on a juvenile court" or has been "committed to, or placed under the custody of," a state agency or department or an individual or entity "appointed by a [s]tate or juvenile court" satisfied when a district court has jurisdiction over a juvenile traffic offense and places the juvenile on probation with certain conditions for 12 months?

## ANALYSIS

■■■ "SIJ status provides a means for abused, neglected, and abandoned immigrant youth to obtain lawful permanent residency and a path to United States citizenship under federal law." *In re Guardianship of Guaman,* 879 N.W.2d 668, 671 (Minn.App.2016). Such immigrants may seek SIJ status to avoid "being deported along with abusive or neglectful parents, or deported to parents who had abandoned them once in the United States." *Yeboah v. U.S. Dep't of Justice,* 345 F.3d 216, 221 (3d Cir.2003). A petitioner must be under the age of 21 to apply. 8 C.F.R. § 204.11(c) (2016).

A prerequisite to applying for SIJ status is a state court order finding that (1) the immigrant either has been "declared de-

pendent on a juvenile court" or has been "committed to, or placed under the custody of," a state agency or department or an individual or entity "appointed by a [s]tate or juvenile court"; (2) the immigrant's reunification with one or both parents "is not viable due to abuse, neglect, abandonment, or a similar basis found under [s]tate law"; and (3) it would not be in the immigrant's best interests to return to his or her country of origin. 8 U.S.C. § 1101(a)(27)(J)(i)–(ii); *see also* 8 C.F.R. § 204.11 (2016).

■■■ A state court's findings "do not bestow any immigration status on SIJ applicants." *Guaman,* 879 N.W.2d at 671. Rather, the United States Citizenship and Immigration Services determines if an applicant qualifies for SIJ status. *Id.; see Simbaina v. Bunay,* 221 Md.App. 440, 109 A.3d 191, 198 (2015) (stating that "the ultimate decision regarding the child's immigration status rests with the federal government" (quotation omitted)). The role of the state courts is only to determine if the record supports the specific findings that the SIJ statute charges them with making. This court has observed that the federal statute

> contemplates the entry of such findings when an immigrant has been declared dependent on a juvenile court (as in child-protection proceedings), has been placed in the custody of a state agency or department (as in juvenile-delinquency proceedings), or has been placed in the custody of an individual or entity "by a state or juvenile court" (as in guardianship proceedings).

*Guaman,* 879 N.W.2d at 672 (quoting 8 U.S.C. § 1101(a)(27)(J)(i)).

A.S. challenges the district court's finding that he does not meet the first SIJ-status criterion that he "has been declared dependent on a juvenile court" or has been "committed to, or placed under the custody

of, an agency or department of a [s]tate, or an individual or entity appointed by a [s]tate or juvenile court." *See* 8 U.S.C. § 1101(a)(27)(J)(i). A.S. contends that he meets both alternatives by virtue of the district court having jurisdiction over his juvenile traffic offense and by being placed on probation for 12 months.

▮ Generally, we review a district court's findings of fact for clear error. *Rubey v. Vannett*, 714 N.W.2d 417, 423 (Minn.2006). A.S. argues, however, that the district court's finding rests on an erroneous interpretation of the SIJ statute, thus raising an issue of statutory interpretation subject to de novo review. *See Lee v. Lee*, 775 N.W.2d 631, 637 (Minn.2009). When the words of a statute are free from ambiguity, we will not look beyond the statute's plain language. *Lietz v. N. States Power Co.*, 718 N.W.2d 865, 870 (Minn.2006). If a term is undefined, we may construe it "according to its common and approved usage." *City of Brainerd v. Brainerd Invs. P'ship*, 827 N.W.2d 752, 756 (Minn. 2013) (quotation omitted).

## A. Dependency on a Juvenile Court

▮ A.S. contends that a district court's jurisdiction over a juvenile traffic offense makes the juvenile "dependent on a juvenile court." *See* 8 U.S.C. § 1101(a)(27)(J)(i). Under the SIJ statute, dependency on a juvenile court is established if the juvenile "[h]as been declared dependent upon a juvenile court ... in accordance with state law governing such declarations of dependency." 8 C.F.R. § 204.11(c)(3). A "juvenile court" is a court "having jurisdiction under [s]tate law to make judicial determinations about the custody and care of juveniles." *Id.* (a).

Minnesota law does not currently define "dependency" but formerly defined "dependent child" as a child:

(a) [w]ho is without a parent, guardian, or other custodian; or

(b) [w]ho is in need of special care and treatment required by a physical or mental condition and whose parent, guardian, or other custodian is unable to provide it; or

(c) [w]hose parent, guardian, or other custodian for good cause desires to be relieved of the child's care and custody; or

(d) [w]ho is without proper parental care because of the emotional, mental, or physical disability; or state of immaturity of the child's parent, guardian, or other custodian.

Minn.Stat. § 260.015, subd. 6 (1986). The "dependent child" definition has been encapsulated by the "[c]hild in need of protection or services" (CHIPS) standard. *See* Minn.Stat. § 260C.007, subd. 6 (2014); *see also In re Welfare of Child of S.S.W.*, 767 N.W.2d 723, 731–32 n. 2 (Minn.App. 2009) (noting that the CHIPS standard replaced the dependent-child standard).

Here, the disposition of A.S.'s juvenile traffic offense did not result in a CHIPS declaration. But while a CHIPS adjudication may establish dependency on a juvenile court, it is not necessarily the only means. A.S. argues that he is dependent on the juvenile court because the juvenile court "accepted jurisdiction over [his] delinquency proceeding" and, by its disposition of the case, provided A.S. "care and guidance" to help rehabilitate him consistent with Minnesota law governing delinquent children.

A.S.'s reliance on Minnesota's delinquency law to establish his dependency on the juvenile court is misplaced because this was not a delinquency proceeding. The district court had juvenile court jurisdiction under Minnesota law because A.S. had engaged in underage drinking and driving and was alleged to be "a juvenile traffic

offender," not because he was alleged to be "delinquent." *See* Minn.Stat. § 260B.101, subd. 1 (2014). Minnesota law expressly excludes "juvenile highway traffic offender" from the definition of "delinquent child." *See* Minn.Stat. §§ 260B.007, subd. 6 (2014) (defining "delinquent child"), .225, subds. 1(b), 2 (2014) (defining "[m]ajor traffic offense" and "juvenile highway traffic offender").

The dispositions available to a district court for juvenile highway traffic offenses are identified in Minn.Stat. § 260B.225, subd. 9 (2014). Consistent with that statute, the district court stayed adjudication and imposed probation with conditions that A.S. obey the law and school and home rules, perform community service, attend a MADD Victim Impact Panel, not use drugs or alcohol, and pay a fee. *See* Minn. Stat. § 260B.225, subd. 9(6) (providing that a court finding a juvenile traffic offense may "place the child under the supervision of a probation officer in the child's own home under conditions prescribed by the court including reasonable rules relating to operation and use of motor vehicles ... directed to the correction of the child's driving habits"). This disposition was not a disposition for the "rehabilitation of the child" under Minnesota's delinquency law, *see* Minn.Stat. § 260B.198 (2014) (describing dispositions when a child is found delinquent), nor did the conditions prescribe A.S.'s custody or care, *see* 8 C.F.R. § 204.11(a).

A.S. cites to *In re Menjivar* for the proposition that jurisdiction over his juvenile traffic offense means that he is dependent on a juvenile court. 1995 WL 18235939, at *2 (AAU Jan. 3, 1995). This court is not bound by a federal administrative agency decision, but in any event *Menjivar* is distinguishable. In *Menjivar,* a court had appointed a guardian for the

child. *Id.* The Immigration and Naturalization Service determined:

The acceptance of jurisdiction over the custody of a child by a juvenile court, when the child's parents have effectively relinquished control of the child, makes the child dependent upon the juvenile court, whether the child is placed by the court in foster care or, as here, in a guardianship situation.

*Id.* A.S.'s parents may have relinquished control, but that does not lead to the conclusion that by exercising jurisdiction over A.S.'s juvenile traffic offense the district court accepted "jurisdiction over [A.S.'s] custody." *See id.* A.S. was 17 years old at the time of the traffic offense and nearly 18 at the time he moved for SIJ findings. There was no action by the district court to accept jurisdiction over his custody. The district court never placed A.S. in foster care or a similar setting, nor was A.S. placed in a guardianship.

We do not endeavor to identify every disposition that may result in dependency on a juvenile court. *Compare In re Fifo v. Fifo,* 127 A.D.3d 748, 6 N.Y.S.3d 562, 564–65 (2015) (concluding that, "based on the particular circumstances of this case," children were "dependent upon a juvenile court" when the mother had petitioned for and obtained an order of protection directing the father to stay away from the children), *and In re Ashley W.,* 85 A.D.3d 807, 925 N.Y.S.2d 551, 553 (2011) (stating that "if the guardianship petitions are granted, the children will be able to establish their dependency on a juvenile court"), *with In re Hei Ting C.,* 109 A.D.3d 100, 969 N.Y.S.2d 150, 151 (2013) (holding "that a child support order does not satisfy the requirement ... that a child be dependent on a juvenile court" (quotation omitted)). But we conclude that, in this case, the district court's jurisdiction over A.S.'s juvenile traffic offense and the resulting

placement on probation with certain conditions did not render A.S. "dependent on a juvenile court." *See* 8 U.S.C. § 1101(a)(27)(J)(i).

## B. Commitment or Custody

■ A.S. also argues that his placement on probation meets the SIJ-status criterion of having been "committed to, or placed under the custody of," a state agency or department or an individual or entity "appointed by a [s]tate or juvenile court." *See id.* The SIJ statute and corresponding regulations do not define "committed" or "custody." We therefore look to the plain meaning of those terms. *See Brainerd Invs. P'ship,* 827 N.W.2d at 756. To "commit" means to "put in trust or charge," or to "place officially in confinement or custody, as in a mental health facility." *The American Heritage Dictionary* 371 (5th ed.2011). Black's Law Dictionary defines "custody" as "[t]he care and control of a thing or person for inspection, preservation, or security." *Black's Law Dictionary* 441 (9th ed.2009).

A.S.'s probation does not equate to having been "committed to, or placed under the custody of," a state agency or department or an individual or entity as is contemplated by the SIJ statute. A.S. has not been "committed to" the probation department because the department is not in "charge" of A.S., *cf. In re Emma M.,* 74 A.D.3d 968, 902 N.Y.S.2d 651, 652 (2010) (stating that the petitioner "by reason of her adoption, had been legally committed ... to her adoptive parents"), nor is A.S. subject to "confinement" by the probation department. Furthermore, A.S. has not been placed in the probation department's "custody" because the department is not responsible for his "care ..., preservation, or security."

A.S. contends that his case is analogous to *Leslie H. v. Superior Court,* 224 Cal. App.4th 340, 168 Cal.Rptr.3d 729 (2014). In *Leslie H.,* the California Court of Appeal stated that "a minor alien adjudicated a delinquent, placed in juvenile hall, and committed upon release to ongoing child welfare agency supervision qualifi[es] under section 1101(a)(27)(J)(i) as a child in dependent, committed, or custodial care." 168 Cal.Rptr.3d at 738. *Leslie H.* is distinguishable. A.S. has never been placed in "juvenile hall" or a similar setting. And the probation department's involvement in ensuring that the terms of probation are followed is appreciably less than that of a child welfare agency supervising a delinquent child following release from a juvenile facility. *See id.*

We conclude that A.S.'s probation does not meet the SIJ-status requirement of having been "committed to, or placed under the custody of," a state department or agency or an individual or entity "appointed by a [s]tate or juvenile court." *See* 8 U.S.C. § 1101(a)(27)(J)(i).

The district court recognized the difficult life that A.S. has lived and the hardship that he may face if he returns to Mexico, without much family support and with limited educational and employment opportunities. But the state courts are bound by the federal statute, and that statute imposes specific standards for the findings a state court must make regarding a prospective SIJ-status petitioner. *See id.* (i)-(ii); *see also* 8 C.F.R. § 204.11. The district court did not err in finding that A.S. was not "declared dependent on a juvenile court" or "committed to, or placed under the custody of," a state agency. *See* 8 U.S.C. § 1101(a)(27)(J)(i). Because our decision on this point is dispositive, we do not reach A.S.'s challenge to the district court's finding regarding the viability of reunification with one or both parents. *See id.* (requiring a finding that "reunification with [one] or both of the immigrant's

parents is not viable due to abuse, neglect, abandonment, or a similar basis found under [s]tate law").

## DECISION

The district court did not err when it concluded that jurisdiction over a juvenile traffic offense and placement of the juvenile on probation with certain conditions does not satisfy the SIJ-status prerequisite of being "declared dependent on a juvenile court" or being "committed to, or placed under the custody of," a state agency or department or an individual or entity "appointed by a [s]tate or juvenile court." Accordingly, we affirm.

**Affirmed.**