IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 1, 2017

## IN RE DOMINGO C.L.

**Appeal from the Chancery Court for Rutherford County
No. 16CV-1308     M. Keith Siskin, Chancellor**

_____

### No. M2016-02383-COA-R3-JV

_____

Obispo C.L. ("the Minor's Uncle") appeals the determination of the Chancery Court for Rutherford County ("the Trial Court") finding that it lacked jurisdiction to make a finding regarding whether it is in the best interest of Domingo C.L. ("the Minor") to be returned to his home country of Guatemala.  We find and hold that the Trial Court had jurisdiction to make this finding, that the petition specifically requested a finding with regard to this issue, and that it was error to refuse to make a finding with regard to whether it was in the Minor's best interest to be returned to Guatemala.  We, therefore, modify the Trial Court's October 31, 2016 Order Appointing Guardian Of A Minor by remanding this case to the Trial Court for a determination of whether it is in the Minor's best interest to be returned to Guatemala.  We affirm the remainder of the Trial Court's order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed as Modified; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which ANDY D. BENNETT and KENNY W. ARMSTRONG, JJ., joined.

Sally M. Joyner, Memphis, Tennessee, for the appellant, Obispo C.L.

# OPINION

## Background

The Minor was born in July of 2000, in Guatemala where he lived in a two-room house with his mother, his maternal grandfather, and his two younger sisters. The Minor's father abandoned the family over four years ago. The Minor's mother worked as a seamstress, but she struggled to provide for the family. The Minor was forced to drop out of school after the sixth grade because his mother was too poor to pay for him to continue. After he dropped out of school, the Minor worked in the corn fields. The Minor's mother was unable to provide adquate food and clothing, and the Minor's family ate only once or twice a day and typically ate only the corn they grew.

In July of 2015, the Minor left Guatemala and traveled to the United States where he was apprehended by U.S. Customs and Border Protection after crossing the U.S. – Mexico border at Hidalgo, Texas. In September of 2015, the Minor was placed with his paternal uncle, the Minor's Uncle, who resides in Rutherford County, Tennessee. The Minor has lived in Rutherford County, Tennessee since that time. The Minor's Uncle has provided the Minor with his own room and adequate food, and the Minor has been enrolled in school in Tennessee.

In August of 2016, the Minor's Uncle filed a Petition for Appointment of Guardian for the Minor requesting, among other things, a specific finding regarding whether it is in the Minor's best interest to be returned to Guatemala. A hearing was held and the Trial Court heard testimony from the Minor who testified about the facts discussed above and also testified that he desires to remain in his uncle's care. The Minor further testified that the circumstances in Guatemala had not improved, and if he were forced to return to Guatemala, he would be subjected to the same conditions.

After the hearing, the Trial Court entered its Order Appointing Guardian Of A Minor ("Order Appointing Guardian") on October 31, 2016. In the Order Appointing Guardian, the Trial Court appointed the Minor's Uncle as guardian of the Minor after finding and holding, *inter alia*:

> Proper notice was given to the Minor and the Petitioner. The biological father's location is unknown and he cannot therefore cannot [sic] be notified of these proceedings nor enter an appearance, and the biological mother executed a document before a notary indicating her desire for the Petitioner to be responsible for the care and custody of the Minor. Further, the Court finds by clear and convincing evidence that the Mother has abandoned the Minor.

2

* * *

The Minor's father abandoned the Minor and his whereabouts are unknown. The Minor's mother resides in Guatemala. The Minor and the Petitioner reside in La Vergne, Tennessee.

THE COURT FURTHER FINDS that reunification with the Minor's father and mother are not viable due to the abandonment, as the Minor's father has failed to communicate with or support the Minor in any way for several years and the Minor's mother has failed to support the child for approximately one year. The Court affirmatively finds that both parents willfully abandoned the child.

The Trial Court refused to make a finding with regard to whether it was in the best interest of the Minor to be returned to Guatemala finding that it lacked jurisdiction to make such a determination. The Minor's Uncle appeals the Trial Court's refusal to make the requested finding to this Court.

**Discussion**

Although not stated exactly as such, the Minor's Uncle raises one issue on appeal: whether the Trial Court erred in finding it lacked jurisdiction to make a finding regarding whether it is in the Minor's best interest to be returned to Guatemala. In the absence of an order containing this finding, the Minor cannot qualify to apply for special immigrant juvenile status pursuant to 8 U.S.C.A. § 1101(a)(27)(J), which provides:

(27) The term "special immigrant" means - -

* * *

(J) an immigrant who is present in the United States - -

(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

3

(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

(iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that - -

(I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and

(II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter;

8 U.S.C.A. § 1101(a)(27)(J) (2014).

While the issue now before us is a matter of first impression in Tennessee, the United States Court of Appeals for the Sixth Circuit has held that a state court has the jurisdiction to make the determination regarding whether sending a child alien back to his or her home country would be in the child's best interest. *Gao v. Jenifer*, 185 F.3d 548, 556 (6th Cir. 1999) (discussing a case arising in Michigan and stating: "As we held above, the state juvenile court had jurisdiction to declare Gao[, the child alien,] dependent and to determine that sending him back to China would not be in his best interest.").

Other state courts also have dealt with the issue now before us. We find the analysis and reasoning employed by the Court of Special Appeals of Maryland ("Maryland Court") on this issue as contained in *In re Dany G.* to be persuasive, and we adopt it. *In re Dany G.*, 117 A.3d 650 (Md. Ct. Spec. App. 2015). The Maryland Court stated:

Special Immigrant Juvenile ("SIJ") status was created by the United States Congress to provide undocumented children who lack immigration status with a defense against deportation proceedings.

Some children present in the United States without legal immigration status may be in need of humanitarian protection because they have been abused, abandoned, or neglected by a

4

parent. Special Immigrant Juvenile (SIJ) status is an immigration classification that may allow for these vulnerable children to immediately apply for lawful permanent resident status ("LPR" status or a "Green Card").

"Special Immigrant Juvenile Status: Information for Juvenile Courts," U.S. Citizen and Immigration Services ("USCIS"), (hereinafter "Info. for Juvenile Courts") available at http://perma.cc/W5W3–MGGC (last visited March 9, 2015); *see also Perez–Olano v. Gonzalez*, 248 F.R.D. 248, 252 (2008) (noting that SIJ provisions create a method for abused, neglected, and abandoned children to become lawful permanent residents). Children eligible for SIJ status may be in the United States with only one parent, or they may have fled to the United States without either parent.

Obtaining SIJ status requires a specific finding from a state juvenile court. Thus, "[t]he [Immigration and Nationality Act of 1990] creates a special circumstance where a State juvenile court is charged with addressing an issue relevant only to federal immigration law." *Simbaina v. Bunay*, 221 Md. App. 440, 449, 109 A.3d 191 (2015) (internal citations omitted).

[State] juvenile courts issue orders that help determine a child's eligibility for SIJ status. A child cannot apply to USCIS for SIJ status without an order from a juvenile court. However, juvenile judges should note that providing an order does not grant SIJ status or a "Green Card"—only [the U.S. Customs and Immigration Services] can grant or deny these benefits. The role of the court is to make factual findings based on state law about the abuse, neglect or abandonment; family reunification; and best interest of the child.

Info. for Juvenile Courts.

The process for applying for SIJ status consists of several steps. First, there must be a filing in state court, which is often in the form of a guardianship or custody complaint, *see Simbaina*, 221 Md. App. at 453–54, 109 A.3d 191, but which can also come through filings in orphans, probate, and delinquency courts, among others. Info. for Juvenile Courts. In conjunction with the state court proceedings there must be a request for specific findings. These findings can be requested at the same time as the initial guardianship or custody complaint, or, as in Dany's case, the motion

for findings can come separately, after the guardianship or custody has been granted.

Once the state court has made the specific findings (which we will explain in detail below), application is made to USCIS for SIJ status. If SIJ status is granted by USCIS, there is a third step of applying to adjust status to Legal Permanent Resident (green card application). As the last two steps are solely under the jurisdiction of USCIS, our analysis focuses on the first step, the filing in the state court and the related request for specific findings.

Federal law defines a "Special Immigrant" as:

(J) an immigrant who is present in the United States—
        (i) who has been declared dependent on a *juvenile court* located in the United States . . . and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found *under State law*;
        (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality . . .

8 U.S.C.A. § 1101(a)(27)(J) (emphasis added). The state juvenile court referenced in 8 U.S.C. § 1101(a)(27)(J) is defined in 8 C.F.R. § 204.11(a) as "a court located in the United States having jurisdiction under state law to make judicial determinations about the custody and care of juveniles." Which courts qualify as "juvenile courts" varies from state to state. *Simbaina*, 221 Md. App. at 453, 109 A.3d 191.

The state juvenile court must make specific findings of fact regarding the child's eligibility for SIJ status. While the state juvenile cases often arise through guardianship or custody proceedings, "[t]he federal statute places no restriction on what is an appropriate proceeding or how these SIJ factual findings should be made." *Id*. at 455, 109 A.3d 191. It is important to remember that the juvenile court is not granting SIJ status. Info. for Juvenile Courts. Rather, the juvenile court is making factual findings that the child meets certain eligibility requirements. *Id*. The required findings are:

6

(1) The juvenile is under the age of 21 and is unmarried; 8 C.F.R. § 204.11(c)(1)-(2);

(2) The juvenile is dependent on the court or has been placed under the custody of an agency or an individual appointed by the court; 8 C.F.R. § 204.11(c)(3);

(3) The "juvenile court" has jurisdiction under state law to make judicial determinations about the custody and care of juveniles; 8 U.S.C.A. § 1101(a)(27)(J)(i); 8 C.F.R. § 204.11(a), (c) [amended by the Trafficking Victims Protection Reauthorization Act ("TVPRA") 2008];

(4) That reunification with one or both of the juvenile's parents is not viable due to abuse, neglect, or abandonment or a similar basis under State law; 8 U.S.C.A. § 1101(a)(27)(J) [amended by TVPRA 2008]; and

(5) It is not in the "best interest" of the juvenile to be returned to his parents' previous country of nationality or country of last habitual residence within the meaning of 8 U.S.C.A. § 1101(a)(27)(J)(ii); 8 C.F.R. § 204.11(a), (d)(2)(iii) [amended by TVPRA 2008].

8 C.F.R. § 204.11(a), (c) & (d); 8 U.S.C.A. § 1101(a)(27)(J) [amended by TVPRA 2008].

These findings of fact by the state juvenile court are issued in a "predicate order." The predicate order must be included with the application for SIJ status submitted to USCIS. *Marcelina M.–G. v. Israel S.*, 112 A.D.3d 100, 973 N.Y.S.2d 714, 719 (2013). Without a predicate order, the child cannot apply for SIJ status. If the underlying juvenile court filing is properly before the court, state courts are required to make these factual findings. *Simbaina*, 221 Md. App. at 455–56, 109 A.3d 191. Also, trial courts should bear in mind that Congress established the requirements for SIJ status knowing that those seeking the status would have limited abilities to corroborate testimony with additional evidence. *See, e.g.*, 8 U.S.C.A. § 1232(8). The purpose of the law is to permit abused, neglected, or abandoned children to remain in this country. *In re Y.M.*, 207 Cal.App.4th 892, 910, 144 Cal.Rptr.3d 54 (2012). Imposing insurmountable evidentiary burdens of production or persuasion is therefore inconsistent with the intent of the Congress. *See* William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), H.R. Res. 7311, 110th Cong. (2008) (enacted).

Because of the statutory requirements, it is imperative that the predicate order be worded very precisely and contain all necessary language. "Template orders are usually not sufficient" and while the predicate order does not have to recount every detail of the case, the federal government requires that it "must show the factual basis for the court's findings." Info. for Juvenile Courts.

## II. SIJ Status Predicate Orders in Maryland Courts

We turn next to the proceedings in Maryland courts that will satisfy the federal law. Pursuant to the Family Law ("FL") Article of the Maryland Code, circuit courts have jurisdiction over, among others:

> (10) custody or guardianship of an immigrant child pursuant to a motion for Special Immigrant Juvenile factual findings requesting a determination that the child was abused, neglected, or abandoned before the age of 18 years for purposes of § 101(a)(27)(J) of the Federal Immigration and Nationality Act.

FL § 1–201(b)(10). In addition, a child is defined, specifically for the purposes of subsection (b)(10), as "an unmarried individual under the age of 21 years." FL § 1–201(a).[1] This means that in Maryland, circuit courts that have jurisdiction over custody and guardianship are able to make the necessary predicate order findings until the child reaches the age of 21 based upon events occurring before the child was 18 years old.[2] Finally, federal law requires a finding of "abuse, neglect[,] or abandonment or a

---

[1] Maryland's extension of jurisdiction over the child until age 21 is consistent with federal regulations, which allow SIJ status application until the child turns 21. Info. For Juvenile Courts. Nevertheless, we urge the trial court to act promptly to consider this matter on remand.

[2] This Court further explained:

> A provision of § 1101(a)(27)(J) provides that specific consent is required for a state juvenile court to obtain jurisdiction over the minor when a juvenile is in the custody of the Department of Health and Human Services (DHHS). As noted by *F.L.M. v. Dep't of Children & Families*, *State of Fla.*, 912 So.2d 1264, 1267 (Fla. Dist. Ct. App. 2005), "a state court is precluded from declaring dependency without the [Secretary of DHHS's] consent only if [DHHS] has actual or constructive custody of the child."
>
> However, it has been determined that a minor is in the 'constructive custody of [DHHS] only when [they are] subject to a final order of deportation.'

*Simbaina*, 221 Md. App. at 456 n. 12, 109 A.3d 191. Here, as in *Simbaina*, Dany is not considered to be in constructive custody of DHHS until a final order of deportation is entered. Therefore, until that time, the circuit court will continue to have jurisdiction over Dany's case.

similar basis under state law" and a finding that it is not in the child's "best interest" to be returned to his country of origin. 8 U.S.C.A. § 1101(a)(27)(J), 8 C.F.R. § 204.11(a), (d)(2)(iii) [amended by TVPRA 2008]. The federal law, however, does not define these terms, leaving it to each state to do so by statute or judicial interpretation. We hold that the trial court must apply the state law definitions of "abuse," "neglect," "abandonment," "similar basis under state law," and "best interest of the child" as we would in Maryland, without taking into account where the child lived at the time the abuse, neglect, or abandonment occurred.

In so holding, we decline to follow the intermediate appellate courts of New Jersey, which have added what we believe to be an unwarranted additional step of applying the New Jersey state law definitions but as applied in the context of the child's home country. *H.S.P. v. J.K.*, 435 N.J. Super. 147, 87 A.3d 255 (App. Div. 2014); *D.C. v. A.B.C.*, 417 N.J. Super. 41, 8 A.3d 260 (Ch. Div. 2010). Essentially, under that view, only if treatment of a child violates his or her home country's standards would it be appropriate to make the predicate findings. We reject that analysis because we believe that our view is more consistent with the federal law. First, the federal law directs the states to apply state law, not a hybrid of the law of a single American state superimposed on the living conditions of another country. 8 U.S.C.A. § 1101(a)(27)(J), 8 C.F.R. § 204.11(a), (d)(2)(iii) [amended by TVPRA 2008]. Second, we think it is meaningful that the federal law appoints state judges to make the predicate findings. These state judges have great expertise in applying these familiar juvenile and family law concepts but far less expertise in understanding the living conditions for children in each of the nearly 200 nations of the world. *See In re Y.M.*, 207 Cal.App.4th at 908, 144 Cal.Rptr.3d 54 (discussing expertise of state courts).[3] If Congress's intention was to require knowledge of living conditions in other countries, surely federal immigration judges would have been a far more appropriate selection. And most importantly, we think that our view is far more consistent with the humanitarian purpose of the federal law. *Id.* at 909, 144 Cal.Rptr.3d 54 (discussing humanitarian purposes); *Perez–Olano*, 248 F.R.D. at 252 (same). We will not voluntarily select a standard that *automatically* sends a child back to wretched conditions that our state has found to be abusive, neglectful, or to constitute abandonment solely because those conditions are

---

[3] *See, e.g.,* Dr. Ranee Kooshie Lal Panjabi, *Sacrificial Lambs of Globalization: Child Labor in the Twenty-First Century*, 37 Denv. J. Int'l L & Pol'y 421 (2009) (discussing the impact of the wide variety of national standards and cultural and societal norms on child labor).

considered acceptable in the child's home country.[4]  Thus, we reiterate that, in making SIJ status predicate findings, trial judges are to determine whether the child would be considered abused, neglected, or abandoned under Maryland law without regard to where the child lived at the time the events occurred.[5]

*In re Dany G.*, 117 A.3d 650, 654-57 (Md. Ct. Spec. App. 2015) (footnotes in original but renumbered).

Additionally, although not intended to be a comprehensive review of the field, we note that several other courts also have reached the conclusion that a state court has the jurisdiction to make findings pursuant to 8 U.S.C.A. § 1101(a)(27)(J) in order to allow a child to apply for special immigrant juvenile status.  *See, e.g., In re Y.M.*, 207 Cal. App. 4th 892, 916 (Cal. Ct. App. 2012) ("Under federal law, an unaccompanied minor has the right to petition the juvenile court for findings under the SIJ statute. . . .  [T]he juvenile court erred in declining to consider Y.M.'s request for SIJ findings." (footnote omitted)); *In the Interest of J.J.X.C.*, 734 S.E.2d 120, 124 (Ga. Ct. App. 2012) ("[T]he [juvenile] court had a duty to consider the SIJ factors and make findings."); *Guardianship of Penate*, 76 N.E.3d 960, 966 (Mass. 2017) ("Because this fact-finding role is integral to the SIJ process, the Probate and Family Court judge may not decline to make special findings if requested by an immigrant child under § 1101(a)(27)(J)."); *In re Interest of Luis G.*, 764 N.W.2d 648, 656 (Neb. Ct. App. 2009) (reversing the decision of a county court after finding "there is evidence in the record to substantiate a finding that the boys had been abused, neglected, and/or abandoned for purposes of their eligibility for special immigrant juvenile status . . . ."); *In the Matter of Mohamed B.*, 83 A.D.3d 829, 831 (N.Y. App. Div. 2011) ("The Family Court improperly denied Mohamed's motion for the issuance of an order declaring that he is dependent on the Family Court and making specific findings that would allow him to apply to the USCIS for special immigrant juvenile status – a gateway to lawful permanent residency in the United States."). C*ontra, Canales v. Torres Orellana*, 800 S.E.2d 208, 217 (Va. Ct. App. 2017) ("[T]he SIJ definition only lists certain factors which, *if* established in state court proceedings, permit a juvenile immigrant to petition the United States Citizenship and Immigration

---

[4] There are other decisions that, without discussion, appear to adopt the same standard that we adopt here. *See, e.g., Eddie E. v. Superior Court*, 234 Cal.App.4th 319, 183 Cal. Rptr. 3d 773 (2015); *In re Interest of Luis G.*, 17 Neb. App. 377, 764 N.W.2d 648 (2009); *In re Antowa McD.*, 50 A.D.3d 507, 856 N.Y.S.2d 576 (2008).

[5] We do not decide today what other "similar basis" may exist under state law beyond abuse, neglect, or abandonment to justify SIJ findings, 8 U.S.C.A. § 1101(a)(27)(J), however, we recognize that the additional grounds of a "similar basis" were added by the TVPRA to allow for expansion of protected grounds beyond those of abuse, neglect, and abandonment. Jessica R. Pulitzer, Note, *Fear and Failing in Family Court: Special Immigrant Juvenile Status and the State Court Problem*, 21 Cardozo J.L. & Gender 201, 225 (Fall 2014).

Services ("USCIS") of the Department of Homeland Security for SIJ status – 8 U.S.C. § 1101(a)(27)(J) does not *require* that the state court make such findings or convey jurisdiction upon them to do so.").

In the case now before us, the Trial Court had jurisdiction to hear the Petition for Appointment of Guardian pursuant to Tenn. Code Ann. § 34-2-101 (2015). As the Trial Court had jurisdiction under Tennessee law to make a determination as to the Minor's custody, it qualifies as a "juvenile court" referenced in 8 U.S.C.A. §1101(a)(27)(J). Furthermore, pursuant to Tenn. Code Ann. § 34-2-105:

> If the court determines a guardian is needed, the court shall enter an order which shall:
>
> * * *
>
> (3) State any other authority or direction as the court determines is appropriate to properly care for the person and property of the minor.

Tenn. Code Ann. § 34-2-105 (2015). The Petition For Appointment Of Guardian stated, in pertinent part:

> 7. <u>Special Immigrant Juvenile Status</u>. The Minor will be applying for Special Immigrant Juvenile Status if this Court grants the guardianship. Therefore, the Petitioner requests the following specific findings be made by the Court and included in the Court's order of Appointment:
>
> (a) That the Minor has been legally placed with a private person by this Court, which is a valid exercise of the Court's jurisdiction under Tenn. Code Ann. § 34-2-101(a).
> (b) That the Court has declared that reunification with the Minor's father is not possible due to abandonment, as abandonment is defined in Tenn. Code Ann. § 36-1-102.
> (c) That the court has declared that it is not in the best interest of the Minor to be returned to his home country of Guatemala.

In the case now before us, 8 U.S.C.A. § 1101(a)(27)(J) establishes that in order to apply for special immigrant juvenile status, the Minor must have, among other things, an order from a Tennessee court placing him in the custody of an individual appointed by the court, a determination that reunification with his parents is not viable due to abandonment[6] as found under Tennessee law, and a determination that it would not be in the Minor's best interest to be returned to Guatemala. *See* 8 U.S.C.A. § 1101(a)(27)(J)

---

[6] 8 U.S.C.A. § 1101(a)(27)(J) provides other possible grounds, but abandonment was the ground proven in this case.

11

(2014) (setting forth definitions showing requirements for special immigrant juvenile status). The Trial Court's Order Appointing Guardian appointed the Minor's Uncle guardian of the Minor, placed the Minor in the custody of the Minor's Uncle, and found that reunification of the Minor with his parents was not viable due to willful abandonment. The Trial Court, however, failed to make a finding with regard to whether it is in the best interest of the Minor to be returned to Guatemala. We note, as did the Maryland Court, that making such a finding does not guarantee that the Minor will be granted special immigrant juvenile status. This finding, however, is a required predicate for the Minor to apply for such status.

The Petition For Appointment Of Guardian properly contained a request seeking a finding regarding whether it is in the Minor's best interest to be returned to Guatemala. We find and hold that the Trial Court had jurisdiction to make this requested finding. We, therefore, remand this case to the Trial Court to make a finding regarding whether it is in the Minor's best interest to be returned to Guatemala. We affirm the remainder of the Trial Court's Order Appointing Guardian.

## Conclusion

The judgment of the Trial Court is modified to remand this case to the Trial Court for a determination of whether it is in the best interest of the Minor to be returned to Guatemala. The judgment of the Trial Court is affirmed in all other respects, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the appellant, Obispo C.L.

_____
D. MICHAEL SWINEY, CHIEF JUDGE