REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1096

September Term, 2014

_____

IN RE: DANY G.

_____

Krauser, C.J.,
Wright,
Friedman,

JJ.

_____

Opinion by Friedman, J.

_____

Filed: July 6, 2015

This case raises the question of what standards a circuit court should use in determining whether a child has demonstrated eligibility for Special Immigrant Juvenile status. The Appellant, Charlene M., raises two questions for our review:

> (1) Did the trial court err in determining that the child had not been neglected under Maryland law.
>
> (2) Did the trial court err in declining to find it would be in the child's best interest not to return to Guatemala.

We conclude that the circuit court applied the wrong legal standard when refusing to make a finding that reunification is not viable due to neglect. We also conclude that the circuit court abused its discretion by not applying the correct legal standard as to neglectful conditions. We, therefore, vacate and remand.[1]

## FACTUAL AND PROCEDURAL HISTORY

Charlene M. ("Charlene") was appointed guardian of her cousin, Dany G. ("Dany"), a native of Guatemala, on November 20, 2013, by the Circuit Court for Montgomery County. Charlene also filed an unopposed motion seeking certain specific findings that would make Dany eligible for the federal government to award him Special Immigrant Juvenile status. On June 26, 2014, the circuit court held a hearing and received testimony in support of these specific findings. Charlene and Dany were the only two witnesses who testified at this hearing.

---

[1] Following the issuance of an "unreported opinion" in the above-captioned appeal, this Court stayed the issuance of the mandate that was to follow and ultimately withdrew that opinion and now issues this "reported opinion" in its place.

Charlene testified that "starting from the age of 12 [Dany] was no longer able to study because he had to work to support his parents." Dany also testified that he left school at age 12 because he had to help his parents who were sick and that he never returned to school while in Guatemala. When he quit school, Dany testified that he went to work in the fields, working with herbicides. Dany explained that this "was very risky work because a lot of people got sick over that." Dany testified that he would work from 6:00 in the morning to 1:00 or 2:00 in the afternoon, Monday through Saturday, and that the money he earned went to help his parents who were disabled and have not worked since Dany was 12 years old.

Dany testified that he came to the United States at the age of 17 because he "had to help [his] parents, because [he] didn't have a future [in Guatemala], and … to have a better future." Dany's father took out a loan to help Dany make the trip to the United States. Once Dany was detained by U.S. immigration authorities, his father took out a second loan to help Dany travel from a detention center in Arizona to Maryland.

Dany testified that he attends Albert Einstein High School in Kensington, Maryland. At the time of the hearing, he had just finished ninth grade and was scheduled to begin 10th grade. Dany testified that he liked attending school and was "learning quite a bit." Charlene testified that her mother and brother currently provide financial support for Dany, and that Dany's parents do not send any monetary support for him. Charlene testified that if Dany was forced to return to Guatemala "he would lose the opportunity to study, as he's doing now." She testified to her belief that if he went back "he would go back and work

to help support his parents and siblings." Dany echoed the prediction that if he were forced to return to Guatemala he would be unable "to make something of [himself] at school. And [he] would have to go back to work" due to his parent's continuing and advancing illness.

Despite this testimony, the trial court determined that it could not find that Dany was abused, abandoned, or neglected under Maryland law. The trial court also refused to find that it was in Dany's best interest to not return to Guatemala. This appeal followed.

**DISCUSSION**

## I.     Special Immigrant Juvenile Status

Special Immigrant Juvenile ("SIJ") status was created by the United States Congress to provide undocumented children who lack immigration status with a defense against deportation proceedings.

> Some children present in the United States without legal immigration status may be in need of humanitarian protection because they have been abused, abandoned, or neglected by a parent. Special Immigrant Juvenile (SIJ) status is an immigration classification that may allow for these vulnerable children to immediately apply for lawful permanent resident status ("LPR" status or a "Green Card").

"Special Immigrant Juvenile Status: Information for Juvenile Courts," U.S. Citizen and Immigration Services ("USCIS"), (hereinafter "Info. for Juvenile Courts") available at http://perma.cc/W5W3-MGGC (last visited March 9, 2015); *see also Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 252 (2008) (noting that SIJ provisions create a method for abused, neglected, and abandoned children to become lawful permanent residents).

Children eligible for SIJ status may be in the United States with only one parent, or they may have fled to the United States without either parent.

Obtaining SIJ status requires a specific finding from a state juvenile court. Thus, "[t]he [Immigration and Nationality Act of 1990] creates a special circumstance where a State juvenile court is charged with addressing an issue relevant only to federal immigration law." *Simbaina v. Bunay*, 221 Md. App. 440, 449 (2015) (internal citations omitted).

> [State] juvenile courts issue orders that help determine a child's eligibility for SIJ status. A child cannot apply to USCIS for SIJ status without an order from a juvenile court. However, juvenile judges should note that providing an order does not grant SIJ status or a "Green Card" – only [the U.S. Customs and Immigration Services] can grant or deny these benefits. The role of the court is to make factual findings based on state law about the abuse, neglect or abandonment; family reunification; and best interest of the child.

Info. for Juvenile Courts.

The process for applying for SIJ status consists of several steps. First, there must be a filing in state court, which is often in the form of a guardianship or custody complaint, *see Simbaina*, 221 Md. App. at 453-54, but which can also come through filings in orphans, probate, and delinquency courts, among others. Info. for Juvenile Courts. In conjunction with the state court proceedings there must be a request for specific findings. These findings can be requested at the same time as the initial guardianship or custody complaint, or, as in Dany's case, the motion for findings can come separately, after the guardianship or custody has been granted.

Once the state court has made the specific findings (which we will explain in detail below), application is made to USCIS for SIJ status. If SIJ status is granted by USCIS, there is a third step of applying to adjust status to Legal Permanent Resident (green card application). As the last two steps are solely under the jurisdiction of USCIS, our analysis focuses on the first step, the filing in the state court and the related request for specific findings.

Federal law defines a "Special Immigrant" as:

(J) an immigrant who is present in the United States –

(i) who has been declared dependent on a *juvenile court* located in the United States…and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found *under State law*;

(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality…

8 U.S.C.A. § 1101(a)(27)(J) (emphasis added). The state juvenile court referenced in 8 U.S.C. § 1101(a)(27)(J) is defined in 8 C.F.R. § 204.11(a) as "a court located in the United States having jurisdiction under state law to make judicial determinations about the custody and care of juveniles." Which courts qualify as "juvenile courts" varies from state to state. *Simbaina,* 221 Md. App. at 453.

The state juvenile court must make specific findings of fact regarding the child's eligibility for SIJ status. While the state juvenile cases often arise through guardianship or custody proceedings, "[t]he federal statute places no restriction on what is an appropriate

proceeding or how these SIJ factual findings should be made." *Id.* at 455. It is important to remember that the juvenile court is not granting SIJ status. Info. for Juvenile Courts. Rather, the juvenile court is making factual findings that the child meets certain eligibility requirements. *Id.* The required findings are:

(1)     The juvenile is under the age of 21 and is unmarried; 8 C.F.R. § 204.11(c)(1) - (2);

(2)     The juvenile is dependent on the court or has been placed under the custody of an agency or an individual appointed by the court; 8 C.F.R. § 204.11(c)(3);

(3)     The "juvenile court" has jurisdiction under state law to make judicial determinations about the custody and care of juveniles; 8 U.S.C.A. § 1101(a)(27)(J)(i); 8 C.F.R. § 204.11(a), (c) [amended by the Trafficking Victims Protection Reauthorization Act ("TVPRA") 2008];

(4)     That reunification with one or both of the juvenile's parents is not viable due to abuse, neglect, or abandonment or a similar basis under State law; 8 U.S.C.A. § 1101(a)(27)(J) [amended by TVPRA 2008]; and

(5)     It is not in the "best interest" of the juvenile to be returned to his parents' previous country of nationality or country of last habitual residence within the meaning of 8 U.S.C.A. § 1101(a)(27)(J)(ii); 8 C.F.R. § 204.11(a), (d)(2)(iii) [amended by TVPRA 2008].

8 C.F.R. § 204.11(a), (c) & (d); 8 U.S.C.A. § 1101(a)(27)(J) [amended by TVPRA 2008].

These findings of fact by the state juvenile court are issued in a "predicate order." The predicate order must be included with the application for SIJ status submitted to USCIS. *Marcelina M.-G. v. Israel S.*, 973 N.Y.S.2d 714, 719 (N.Y. App. Div., 2013).

Without a predicate order, the child cannot apply for SIJ status. If the underlying juvenile court filing is properly before the court, state courts are required to make these factual findings. *Simbaina*, 221 Md. App. at 455-56. Also, trial courts should bear in mind that Congress established the requirements for SIJ status knowing that those seeking the status would have limited abilities to corroborate testimony with additional evidence. *See, e.g.,* 8 U.S.C.A. § 1232(8). The purpose of the law is to permit abused, neglected, or abandoned children to remain in this country. *In re Y.M.*, 207 Cal.App.4th 892, 910 (Cal. Ct. App., 2012). Imposing insurmountable evidentiary burdens of production or persuasion is therefore inconsistent with the intent of the Congress. *See* William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), H.R. Res. 7311, 110th Cong. (2008) (enacted).

Because of the statutory requirements, it is imperative that the predicate order be worded very precisely and contain all necessary language. "Template orders are usually not sufficient" and while the predicate order does not have to recount every detail of the case, the federal government requires that it "must show the factual basis for the court's findings." Info. for Juvenile Courts.

## II.    SIJ Status Predicate Orders in Maryland Courts

We turn next to the proceedings in Maryland courts that will satisfy the federal law. Pursuant to the Family Law ("FL") Article of the Maryland Code, circuit courts have jurisdiction over, among others:

(10) custody or guardianship of an immigrant child pursuant to a motion for Special Immigrant Juvenile factual findings requesting a determination that the child was abused, neglected, or abandoned before the age of 18 years for purposes of § 101(a)(27)(J) of the Federal Immigration and Nationality Act.

FL § 1-201(b)(10).  In addition, a child is defined, specifically for the purposes of subsection (b)(10), as "an unmarried individual under the age of 21 years." FL § 1-201(a).[2] This means that in Maryland, circuit courts that have jurisdiction over custody and guardianship are able to make the necessary predicate order findings until the child reaches the age of 21 based upon events occurring before the child was 18 years old.[3]  Finally,

---

[2] Maryland's extension of jurisdiction over the child until age 21 is consistent with federal regulations, which allow SIJ status application until the child turns 21.  Info. for Juvenile Courts.  Nevertheless, we urge the trial court to act promptly to consider this matter on remand.

[3] This Court further explained:

> A provision of § 1101(a)(27)(J) provides that specific consent is required for a state juvenile court to obtain jurisdiction over the minor when a juvenile is in the custody of the Department of Health and Human Services (DHHS).  As noted by *F.L.M. v. Dep't of Children & Families, State of Fla.*, 912 So.2d 1264, 1267 (Fla. Dist. Ct. App. 2005), "a state court is precluded from declaring dependency without the [Secretary of DHHS's] consent only if [DHHS] has actual or constructive custody of the child."

> However, it has been determined that a minor is in the 'constructive custody of [DHHS] only when [they are] subject to a final order of deportation.'

federal law requires a finding of "abuse, neglect[,] or abandonment or a similar basis under state law" and a finding that it is not in the child's "best interest" to be returned to his country of origin. 8 U.S.C.A. § 1101(a)(27)(J), 8 C.F.R. § 204.11(a), (d)(2)(iii) [amended by TVPRA 2008]. The federal law, however, does not define these terms, leaving it to each state to do so by statute or judicial interpretation. We hold that the trial court must apply the state law definitions of "abuse," "neglect," "abandonment," "similar basis under state law," and "best interest of the child" as we would in Maryland, without taking into account where the child lived at the time the abuse, neglect, or abandonment occurred.

In so holding, we decline to follow the intermediate appellate courts of New Jersey, which have added what we believe to be an unwarranted additional step of applying the New Jersey state law definitions but as applied in the context of the child's home country. *H.S.P. v. J.K.*, 435 N.J.Super. 147 (N.J. Super. Ct. App. Div. 2014); *D.C. v. A.B.C.*, 417 N.J.Super. 41 (N.J. Super. Ct. Ch. Div., 2010). Essentially, under that view, only if treatment of a child violates his or her home country's standards would it be appropriate to make the predicate findings. We reject that analysis because we believe that our view is more consistent with the federal law. First, the federal law directs the states to apply state law, not a hybrid of the law of a single American state superimposed on the living

_____

*Simbaina*, 221 Md. App. at 456 n.12. Here, as in *Simbaina*, Dany is not considered to be in constructive custody of DHHS until a final order of deportation is entered. Therefore, until that time, the circuit court will continue to have jurisdiction over Dany's case.

conditions of another country. 8 U.S.C.A. § 1101(a)(27)(J), 8 C.F.R. § 204.11(a), (d)(2)(iii) [amended by TVPRA 2008]. Second, we think it is meaningful that the federal law appoints state judges to make the predicate findings. These state judges have great expertise in applying these familiar juvenile and family law concepts but far less expertise in understanding the living conditions for children in each of the nearly 200 nations of the world. *See In re Y.M.*, 207 Cal.App.4th at 908 (discussing expertise of state courts).[4] If Congress's intention was to require knowledge of living conditions in other countries, surely federal immigration judges would have been a far more appropriate selection. And most importantly, we think that our view is far more consistent with the humanitarian purpose of the federal law. *Id.* at 909 (discussing humanitarian purposes); *Perez-Olano*, 248 F.R.D. at 252 (same). We will not voluntarily select a standard that *automatically* sends a child back to wretched conditions that our state has found to be abusive, neglectful, or to constitute abandonment solely because those conditions are considered acceptable in the child's home country.[5] Thus, we reiterate that, in making SIJ status predicate findings,

---

[4] *See, e.g.*, Dr. Ranee Kooshie Lal Panjabi, *Sacrificial Lambs of Globalization: Child Labor in the Twenty-First Century*, 37 Denv. J. Int'l L & Pol'y 421 (2009) (discussing the impact of the wide variety of national standards and cultural and societal norms on child labor).

[5] There are other decisions that, without discussion, appear to adopt the same standard that we adopt here. *See, e.g., Eddie E. v. Superior Court*, 234 Cal.App.4th 319 (Cal. Ct. App. 2015); *In re Interest of Luis G.*, 17 Neb.App. 377 (Neb. Ct. App. 2009); *In re Antowa McD.*, 856 N.Y.S.2d 576 (N.Y. App. Div. 2008).

trial judges are to determine whether the child would be considered abused, neglected, or abandoned under Maryland law without regard to where the child lived at the time the events occurred.[6]

### III. Dany's Request

This brings us back to the specifics of Dany's case. Dany's cousin, Charlene, was appointed Dany's guardian on November 20, 2013, by the Circuit Court for Montgomery County. A motion requesting the SIJ status predicate order findings was submitted on November 1, 2013, and a hearing was held on June 26, 2014. Following the hearing, the trial judge found: (1) Dany was under 21; and (2) he was dependent upon a court with proper jurisdiction under Maryland law.

The trial court, however, failed to apply the correct standard as to whether Dany's parents abused, neglected, or abandoned him under Maryland law. The trial court stated, "I can't say that because his father has arthritis and [Dany's] been working, that that amounts to neglect. Certainly he was young when he started working. But I haven't heard anything that amounts to these parents going off and leaving their child to fend for himself. … I can't make that finding based on what I've heard today." As to whether it was in

---

[6] We do not decide today what other "similar basis" may exist under state law beyond abuse, neglect, or abandonment to justify SIJ findings, 8 U.S.C.A. § 1101(a)(27)(J), however, we recognize that the additional grounds of a "similar basis" were added by the TVPRA to allow for expansion of protected grounds beyond those of abuse, neglect, and abandonment. Jessica R. Pulitzer, Note, *Fear and Failing in Family Court: Special Immigrant Juvenile Status and the State Court Problem*, 21 Cardozo J.L. & Gender 201, 225 (Fall 2014).

Dany's best interest not to return to Guatemala it found, "I can't find that it's not in his best interest to be with his family."

We review the trial court's factual determinations under a clearly erroneous standard. Under Maryland Rule 8-131(c):

> When an action has been tried without a jury, the appellate court will review the case on both the law and evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

Findings of fact that are clearly erroneous are marked by a lack of competent and material evidence in the record to support the decision. *Anderson v. Joseph,* 200 Md. App. 240, 249 (2011) (citing *Hillsmere Shores Improvement Ass'n, Inc. v. Singleton*, 182 Md. App. 667, 690 (2008)); *see also Della Ratta v. Dyas*, 414 Md. 556 (2010) (explaining that factual findings are not clearly erroneous if there is *any* competent and material evidence to support them). Conclusions of law, on the other hand, receive no deference and are reviewed *de novo*. *Elderkin v. Carroll*, 403 Md. 343, 353 (2008). Ultimate conclusions are reviewed under the abuse of discretion standard which asks whether the decision is off the center mark and beyond the fringe of what is deemed minimally acceptable. *North v. North*, 102 Md. App. 1, 14 (1994). Finally, Maryland Courts have said that "abuse may be found when the court acts without reference to any guiding rules or principles[.]" *Wilson X v. Dep't of Human Res.*, 403 Md. 667, 677 (2008) (quoting *Touzeau v. Deffinbaugh*, 394 Md. 654, 669 (2006)). Even with respect to a discretionary matter, a trial court must

- 12 -

exercise its discretion in accordance with correct legal standards. *Aventis Pasteur, Inc. v. Shevofilax*, 396 Md. 405, 433 (2001) (citations omitted).

### A. Neglect in Maryland

As stated above, the appropriate standard to apply for the SIJ status predicate order is to determine whether, under the same circumstances and without taking into account where Dany lived at the time, Dany would be considered "neglected" under Maryland law. Dany argues that the trial court erred by failing to find that he was neglected. As we conclude that the trial court misunderstood or misapplied the governing standard, we reverse and remand for findings consistent with the correct standard.

Neglect, under both the Family Law Article and the Courts and Judicial Proceedings Article, is identically defined as "the leaving of a child unattended *or other failure to give proper care and attention* to a child by any parent…under circumstances that indicate (1) that the child's health or welfare is harmed *or placed at substantial risk of harm*." Md. Code Ann., Courts and Judicial Proceedings ("CJP") § 3-801(s); Family Law ("FL") § 5-701(s) (emphasis added). Therefore, the trial court's determination that Dany was not neglected because his parents had not left him to fend for himself, applied only half of the standard for neglect under Maryland law. The circuit court did not inquire or analyze whether Dany's parents had failed to give him proper care and attention while in Guatemala. Failure to apply the proper legal standard alone, warrants reversal.

We are also mindful that if parents in Maryland allow or force their child to leave school at the age of 12, this factor would lead to a finding that the child was neglected. In

fact, it is illegal in Maryland for parents to fail to send their child to school. *See* Md. Code Ann., Educ. § 7-301 (In Maryland, the compulsory education age is currently 16 years of age but will rise to 17 years on July 1, 2015, and will rise again to 18 years on July 1, 2017). Similarly, if a child worked 8 hours a day, 6 days a week in Maryland under dangerous conditions, a finding of neglect would surely follow. It is illegal for parents in Maryland to force their child into child labor. "Employment of Minors (Work Permits)," Department of Labor, Licensing and Regulation, Division of Labor and Industry, available at http://perma.cc/W9DX-SL8D (last visited March 11, 2015) (explaining that the Department of Labor will not issue work permits to any child under the age of 14); s*ee also* Md. Code Ann., Lab. & Empl. § 3-209. Therefore, if on remand Dany presents testimony similar to that offered in support of his initial motion and it is found to be credible, it will be more than sufficient to establish a finding of neglect in this State.

### B.    *Best Interest Standard in Maryland*

Dany's next argument is that the trial court erred by failing to find that it is not in Dany's best interest to return to Guatemala. As we conclude that the trial court abused its discretion by applying an incorrect standard, we reverse and remand for additional findings.

To determine a child's best interest in Maryland, "[t]he fact finder is called upon to evaluate the child's life chances … and predict with whom the child will be better off in the future." *See Montgomery Cnty. v. Sanders*, 38 Md. App. 406, 419 (1977) (applying the best interest standard in the context of child custody). In the context of a SIJ status

predicate order, the inquiry is a straight-forward comparison. The trial court must decide whether Dany's interests would be better served by remaining in Maryland, living with his aunt and cousins, and attending high school or if Dany's interests would be better served by being returned to the same conditions he fled, namely, working long hours in dangerous conditions with little chance for obtaining an education.

The trial court found, "I can't find that it's not in his best interest to be with his family." This finding, however, compared living situations without accounting for the neglect (discussed in the prior section) that Dany would endure if he was to be returned to Guatemala. Thus, because the court's best interest finding was at least indirectly based on the use of an improper standard for determining neglect, it also cannot stand.

## CONCLUSION

For the foregoing reasons, we vacate the judgment and remand the matter to the Circuit Court for Montgomery County for appropriate proceedings.[7]

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THE INSTRUCTIONS CONTAINED IN THIS OPINION. COSTS TO BE PAID BY APPELLANT.**

---

[7] Although not discussed at the hearing below or contested in this appeal, the SIJ status predicate order must also specify a finding of whether Dany is single or married.