HEADNOTE:    *Oscar Orlando Martinez v. Silvia Trujillo Sanchez*, No. 61, September Term, 2017

**SPECIAL IMMIGRANT JUVENILE STATUS—8 U.S.C. § 1101(a)(27)(J)—STATE COURT PREDICATE ORDER—FIRST-LEVEL FACTUAL FINDINGS.**

Father filed petition for custody of Daughter and for declaration that she is eligible for Special Immigrant Juvenile ("SIJ") status. Mother was served but did not participate in proceedings. Daughter was born in El Salvador in 2000 and was abandoned by Mother when she was three. Father later moved to the United States for employment and to escape gang activity. Daughter crossed into the United States in Texas in 2015 and was taken into custody by border patrol and released to Father. She has been living with Father and Stepmother in Hyattsville and attending school. At close of evidentiary hearing, court granted custody to Father and granted Daughter SIJ status. Father submitted order that included first-level factual findings. Court crossed out proposed factual findings but signed order containing conclusions that Daughter had been abandoned by Mother and that it was not in Daughter's best interest to return to El Salvador.

Father noted appeal, contending that the court's order was deficient in that, notwithstanding that it stated conclusions necessary for a finding of eligibility for SIJ status, it did not set forth specific first-level factual findings to support those conclusions, and therefore could be rejected by the USCIS when Daughter applies for SIJ status.

*Held*:    Order vacated and case remanded for court to make specific factual findings in predicate order. The state court's role in a SIJ matter is to make factual findings in a predicate order that the juvenile then submits to the USCIS in petitioning the federal government for SIJ status. The USCIS may reject a petition if the predicate order is a mere template that gives conclusions but does not make factual findings on which the conclusions are based. All indications in this case are that the trial court credited the testimony by Father and Daughter, but failed to include specific factual findings in its predicate order on the mistaken belief that that was not necessary. Case remanded for the court to issue an adequate predicate order and, if it deems necessary, hold an additional hearing.

Circuit Court for Prince George's County
Case No. CAD16-17018

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 61

September Term, 2017

_____

OSCAR ORLANDO MARTINEZ

v.

SILVIA TRUJILLO SANCHEZ

_____

Eyler, Deborah S.,
Kehoe,
Battaglia, Lynne A.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Eyler, Deborah S., J.

_____

Filed: March 1, 2018

Oscar Orlando Martinez, the appellant, noted this appeal from an order of the Circuit Court for Prince George's County granting him custody of his daughter, Jenniffer Elizabeth Martinez-Trujillo ("Jenniffer"), and declaring her eligible for Special Immigrant Juvenile ("SIJ") status, under 8 U.S.C. § 1101(a)(27)(J).[1]  Silvia Trujillo Sanchez, Jenniffer's mother, the appellee, has not participated in any of the proceedings in this case.

Martinez presents one question for review, which we have reworded slightly:

---

[1] 8 U.S.C. section 1101(a)(27)(J) states:

(J) an immigrant who is present in the United States--
> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
> (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that--
>> (I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and
>> (II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter[.]

Did the trial court err by failing to make the necessary predicate factual findings supporting its determination that Jenniffer was eligible for SIJ status?

For the following reasons we shall vacate the court's order and remand with instructions.

## FACTS AND PROCEEDINGS

Jenniffer was born on July 9, 2000, in Santa Ana, El Salvador, to Martinez and Sanchez. At first, she lived with both her parents in Santa Ana. In 2003, Sanchez left Martinez and moved away to live with another man. Jenniffer remained with Martinez. Since then, with the exception of one conversation, Sanchez has had no contact with Jenniffer.

In 2006, Martinez moved to the United States to find work and escape gang activity. He arranged for Jenniffer to live with his mother in El Salvador. Martinez settled in Silver Spring, Maryland, with his brother, Ronald Reagan Martinez. He obtained steady employment. Throughout his time in the United States he maintained regular contact with Jenniffer by telephone and sent money to El Salvador for her support. Martinez remarried and now lives with his wife, who also is from El Salvador, in an apartment in Hyattsville, Maryland.

On March 28, 2015, when she was 14 years old, Jenniffer left El Salvador, traveling north into Mexico with Martinez's stepson, Cesar. They crossed the border into Texas on April 17, 2015, and were apprehended by the United States Border Patrol. They were released into Martinez's custody. Jenniffer has lived in Hyattsville with Martinez, Cesar, and her stepmother since then.

On April 12, 2016, in the Circuit Court for Prince George's County, Martinez filed a complaint for custody of Jenniffer and a motion for findings that would make her eligible for SIJ status under 8 U.S.C. section 1101(a)(27)(J). In addition to the facts recited above, he alleged that before Jenniffer left El Salvador, a girl she knew tried to recruit her on behalf of a gang. Jenniffer refused but was likely to be recruited again. He further alleged that Jenniffer's mother had abandoned her and that his own mother was "getting old" and was "dealing with some medical issues" that made it difficult for her to continue to care for Jenniffer.

Sanchez was served with the complaint in El Salvador but did not file an answer. On January 17, 2017, the court entered an order of default against her.

On February 6, 2017, the court held a hearing on Martinez's complaint. Jenniffer, then age 16, testified that she was in the tenth grade and was attending a local public school. She planned to go to college to study industrial engineering. Her father and stepmother were supporting her, and she was happy living with them. She had left El Salvador because she "wanted to do better in [her] life" and to be with her father. She had no relationship with her mother. Her only contact with her mother, which happened when she was 14, was a telephone conversation in which her mother asked forgiveness for abandoning her.[2]

---

[2] In her testimony, Jenniffer said her mother "called" her, but in a Declaration attached to her motion for findings making her eligible for SIJ status, she averred that it was an in-person meeting. This discrepancy may have arisen from translation issues at the hearing.

According to Jenniffer, in El Salvador she had a "problem with a girl [who] belonged to a gang and she told [Jenniffer] that she was always going to be waiting for [Jenniffer] after . . . school." Shortly before Jenniffer left El Salvador, she saw this girl outside her school staring at her from a distance. Jenniffer testified that there were a "lot of problems with gangs in El Salvador[.]"

Martinez testified that Sanchez left him in 2003 for another man and "abandoned" Jenniffer at that time. He stated that he and his wife were willing and able to support Jenniffer.

At the conclusion of the hearing, the court ruled from the bench as follows:

> All right. Through the testimony and evidence [in this] case, the Court's had an opportunity to assess the credibility of the witnesses, review the testimony and the evidence. The Court finds that [Martinez] is the biological father of the minor child; that this Court sits as a juvenile court and has authority to render decisions regarding a juvenile's custody; that the child is under the age of 21 years old and unmarried and in school; that the Court finds as a result of the abuse, abandonment and neglect that reunification with [Sanchez] in [El Salvador] is not in her best interests. The Court will grant . . . sole legal and physical custody to [Martinez] and grant [SIJ] status.

On February 28, 2017, the court entered an "Order Regarding Minor's Eligibility For [SIJ] Status." It used a proposed order submitted by counsel for Martinez, but modified it by crossing out many of the proposed factual findings. The court found that Jenniffer was born in El Salvador, was under age 21, and was unmarried; and that the court had jurisdiction to make determinations about her care and custody. Including the stricken portions, the order reads as follows:

-4-

The Court has placed Jenniffer . . . in the Custody of . . . Martinez[] because she was abandoned by her mother, [Sanchez], and because [Martinez] is willing and able to act in the best interest of Jenniffer . . . .

THE COURT FURTHER FINDS that reunification with one or both of Jenniffer['s] . . . parents is not viable due to abuse, neglect, or abandonment or similar basis under state law under 8 U.S.C. § 1101(a)(27)(J). ~~Here, Jenniffer['s] . . . mother abandoned her when she was three years old and Jenniffer . . . has had no meaningful contact with her mother ever since.~~

THE COURT FURTHER FINDS that it is not in Jenniffer['s] . . . best interest to be returned to her parents' previous country of nationality or country of last habitual residence of El Salvador within the meaning of Section 101(a)(27)(J) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(27)(J)(ii) and 8 C.F.R. § 204.11(a), (d)(2)(iii). Jenniffer . . . cannot return to her parents' home country of El Salvador ~~because her mother abandoned her when he [sic] was three years old and she has had no meaningful contact with her mother ever since. Jenniffer . . ., without the daily threat of gang violence, is thriving here in the United States under the care and guidance of her father, the Plaintiff. Jenniffer . . . is attending at high school [sic] and one day hopes to become an industrial engineer.~~ Therefore, it is in Jenniffer['s] . . . best interest to remain in the United States.

This timely appeal followed.

## DISCUSSION

"The Immigration and Nationality Act of 1990, which established the initial eligibility requirements for SIJ status, was enacted 'to protect abused, neglected or abandoned children who, with their families, illegally entered the United States.'" *Simbaina v. Bunay*, 221 Md. App. 440, 448–49 (2015) (quoting *Yeboah v. U.S. Dep't of Justice*, 345 F.3d 216, 221 (3d Cir. 2003)). With respect to SIJ status, the Act "creates 'a special circumstance where a State juvenile court is charged with addressing an issue relevant only to federal immigration law.'" *Id*. at 449 (quoting *H.S.P. v. J.K.*, 87 A.3d 255, 259 (N.J. Super. Ct. App. Div. 2014)). The decision whether to grant SIJ status

rests with the United States Citizenship and Immigration Services bureau ("USCIS").

Before a child may apply to the USCIS for SIJ status, she first must obtain a "predicate

order" from a state court. *Id*. at 449–50. The court must make certain findings in the

predicate order, including:

> 1) that the juvenile is under the age of 21 and is unmarried;
> 2) that the juvenile is either dependent upon the juvenile court[3], or has been placed in the custody of a state agency or an individual or entity by the court;
> 3) that the state court has jurisdiction over the custody and care of the juvenile;
> 4) that reunification of the juvenile with one or both of his or her parents is not viable due to abuse, neglect, abandonment, or similar bases under state law; and
> 5) that it is not in the best interest of the juvenile to be returned to his or her parents' previous country of nationality.

*See* 8 C.F.R. §204.11(a),(c) & (d). The child attaches the predicate order to her petition

to the USCIS and that agency adjudicates the petition using the findings in the order. *See*

*Simbaina*, 221 Md. App. at 452 (explaining that the state court does not make an

immigration status determination; it merely makes factual findings that may form the

predicate for that determination by federal authorities). If the child is granted SIJ status

by the USCIS, she may apply for an "adjustment to lawful permanent resident status[.]"

*Id*. at 450.

Martinez contends the trial court erred by not including in its order specific factual

findings to support its conclusions that Jenniffer was abandoned by her mother in El

---

[3] The term "juvenile court" as defined under the regulations to the federal statute includes any court "having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a).

Salvador and that it is not in her best interest to return to El Salvador. He emphasizes that the USCIS may reject a SIJ visa petition if the predicate order is a mere "template order." He relies upon this Court's decisions in *Simbaina, supra*, and *In re Dany G.*, 223 Md. App. 707 (2015), concerning the court's obligations in SIJ cases.

In *Simbaina*, the trial court refused to consider a request to make SIJ findings in the course of a custody hearing, misapprehending that it only could do so in a separate guardianship proceeding. We reversed, holding that the court had the authority to do so and explaining, in the context of separation of powers, the limited role that state courts play in the SIJ immigrant process. Specifically, under 8 U.S.C. section 1101(a)(27)(J), the state court must "make specific factual findings before a minor can petition the [USCIS] for SIJ status." *Simbaina*, 221 Md. App. at 450. "The federal statute directs the [state court] to enter factual findings that are advisory to a federal agency determination" of SIJ status. *Id*. at 451. The ultimate decision on immigration is made by the federal agency, however. It is incumbent upon the state court "to make its own independent factual findings regarding whether [the child] fulfills the requirements of § 1101(a)(27)(J)," and that is the extent of its role. *Id.* at 459.

In *Dany G*., we held that a state court assessing whether a child has been abused, neglected, or abandoned and assessing the child's best interests for purposes of the SIJ statute must apply the "state law definitions of [those terms]" without regard to the prevailing standards in the child's home country. 223 Md. App. at 717. We emphasized that it is "imperative that [a] predicate order [issued by a state court] be worded very precisely and contain all necessary language." *Id*. at 716. "[W]hile [a] predicate order

does not have to recount every detail of the case, the federal government requires that it 'must show the factual basis for the court's findings.'" *Id*. (quoting "Special Immigrant Juvenile Status Information for Juvenile Courts," USCIS available at https://perma.cc/LS3R-T3LN (last visited Feb. 12, 2018)).

The federal regulatory scheme governing the SIJ status process supports a conclusion that the state court predicate order must include specific factual findings and not just general conclusory statements. For example, the approval of a petition to the USCIS seeking SIJ status may be revoked, with notice, upon "good and sufficient cause," *see* 8 U.S.C. section 1155, which the *USCIS Policy Manual* warns can be "if the record contains evidence or information that directly and substantively conflicts with the evidence or information that was the basis for the petitioner's eligibility for SIJ classification." *USCIS Policy Manual*, Vol. 7, Part F, Ch. 7 (C)(2) available at https://perma.cc/KD8D-CKR6 (last visited Feb. 12, 2018). The state court's order is part of the "evidence or information" on which the USCIS makes its SIJ status decision, including eligibility. The fact that a revocation decision could be made based on a finding that information in the state's order conflicts with other information before the USCIS implies that the information in the order must be specific, not general, to begin with.

We return to the case at bar. The circuit court's general conclusions in its order that Jenniffer was abandoned and that it is not in her best interest to return to El Salvador make it clear that the court credited her and Martinez's testimony. The order does not include any first-level factual findings, however. It concludes that Sanchez abandoned

Jenniffer but does not specify when and in what circumstances Jenniffer was abandoned and whether the abandonment has been ongoing so that no mother-daughter relationship was formed or exists. Likewise, the order concludes that it is not in Jenniffer's best interest to return to El Salvador but does not provide any first-level factual findings in support. The proposed order submitted to the court included particular supporting factual findings, but the court crossed most of them out, leaving only conclusions. As signed and entered by the court, the order is effectively a "template order" that, as we explained in *Dany G.*, USCIS guidance indicates is not sufficient for its use.

We doubt the trial court crossed out the proposed factual findings because it was rejecting them. It seems much more likely that it was operating under the misconception that specific factual findings were not necessary. They are necessary, and therefore we shall vacate the court's order and remand the matter for the court to enter a new order that sets forth first-level factual findings. The revised order should be entered *nunc pro tunc* to the date of the original order.[4]

> **ORDER OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY VACATED. CASE REMANDED WITH INSTRUCTIONS TO ENTER A REVISED ORDER THAT INCLUDES SPECIFIC FACTUAL FINDINGS. COSTS TO BE PAID BY THE APPELLEE.**

---

[4] On remand, the court may hold an additional hearing if it deems that necessary.