# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3938-18T2

L.A.P.H.

    Plaintiff-Appellant,

v.

M.A.R., (Deceased),

    Defendant-Respondent.

_____

IN THE MATTER OF L.V.E.P.[1], a Minor.

_____

Submitted November 14, 2019 – Decided August 12, 2020

Before Judges Alvarez and Nugent.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FD-07-2382-17.

---

[1] Initials are used in this appeal of an order denying a motion to amend a predicate order required to petition the United States Citizenship and Immigration Services to protect the privacy and safety of the appellant and minor child. Protection of the appellant and minor child is a compelling interest that outweighs the Judiciary's commitment to transparency.

Grigaite & Abdelsayed LLC, attorneys for appellant (Shokry G. Abdelsayed, on the brief).

PER CURIAM

Qualifying for "special immigrant juvenile" (SIJ) status under the Immigration Act of 1990, as amended by the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No.110-457, 122 Stat. 5044 (Trafficking Protection Act), provides "a form of immigration relief permitting alien children to obtain lawful permanent residency and, eventually, citizenship."  H.S.P. v. J.K., 223 N.J. 196, 200 (2015).  A child residing in New Jersey who seeks SIJ status must apply to a Superior Court judge for a predicate order finding the child meets the statutory requirements.  Ibid.  The child must then petition the United States Citizenship and Immigration Services (Immigration Services) and demonstrate statutory eligibility.

In this case, plaintiff L.A.P.H., on behalf of her child, applied for and received from a Family Part judge a predicate order the child met the statutory criteria for SIJ status.  Immigration Services deemed the Family Part judge's findings inadequate.  The child filed a motion for an amendment to the first order, and a different Family Part judge denied the motion and entered the order from which this appeal is taken.  We reverse and remand for further proceedings.

In 2017, plaintiff commenced this action in the Family Part seeking custody of her child and a predicate order under the Trafficking Protection Act and its implementing regulation, 8 C.F.R. § 204.11(c), that would enable her child, a non-citizen, to apply for SIJ status. A court deciding such applications must make the following findings:

> (1) The juvenile is under the age of 21 and is unmarried;
>
> (2) The juvenile is dependent on the court or has been placed under the custody of an agency or an individual appointed by the court;
>
> (3) The "juvenile court" has jurisdiction under state law to make judicial determinations about the custody and care of juveniles;
>
> (4) That reunification with one or both of the juvenile's parents is not viable due to abuse, neglect, or abandonment or a similar basis under State law; and
>
> (5) It is not in the "best interest" of the juvenile to be returned to his parents' previous country of nationality or country of last habitual residence within the meaning of 8 U.S.C.A. §1101(a)(27)(J)(ii). . . .
>
> [H.S.P., 223 N.J. at 219 (citing In re Dany G., 223 Md. App. 707 (Md. Ct. Spec. App. 2015)).]

When making these findings, the court is to apply New Jersey law. Id. at 212.

The Family Part judge who heard plaintiff's initial application found the child, a citizen and national of Guatemala, was an unmarried, unemancipated

3

minor under the age of twenty-one. The judge noted New Jersey law authorized the court to make judicial determinations about custody and care of juveniles. The judge declared the child dependent on the Superior Court of New Jersey. Based on the evidence before him, the judge determined that it was not in the best interest of the child to be returned to the country of origin and of last habitual residence, Guatemala, because there was no one in Guatemala to support and care for the child, the child's father and numerous family and friends having been killed as the result of pervasive gang violence.[2]

Significant to this appeal, the court made "no findings as to abuse and neglect [because] reunification is otherwise impossible because the minor's father is deceased." The court granted sole physical and residential custody of

---

[2] The longstanding violence in Guatemala during the period that included the time of the father's death is well known. "Following the official end of Guatemala's 36-year-long armed conflict in 1996," widespread social and economic violence by youth gangs and other groups had become the norm. Alisa Winton, Youth, gangs and violence: Analysing the Social and spatial mobility of young people in Guatemala City, CHILDREN'S GEOGRAPHIES 3:2 167, 170 (2005), https://www.tandfonline.com/doi/full/10.1080/14733280500161537 "Incredibly, the death rate in Guatemala is now higher than it was for much of the civil war. . . . Between 2000 and 2009, the number of killings rose steadily, ultimately reaching sixty-four hundred. . . . In 2009, fewer civilians were reported killed in the war zone of Iraq than were shot, stabbed, or beaten to death in Guatemala." David Gran, A Murder Foretold: Unravelling the ultimate political conspiracy, The New Yorker, (March 28, 2011) https://www.newyorker.com/magazine/2011/04/04/a-murder-foretold.

the child to plaintiff after determining it was in the child's best interest to remain outside Guatemala in the care and custody of plaintiff, the child's mother.

In September 2017, after the Family Part judge entered his order, plaintiff submitted a Form I-360 application to Immigration Services for SIJ status for her child. Immigration Services found the Family Part order inadequate. Specifically, Immigration Services deemed the Family Part Order insufficient because "it does not show that reunification with one or both of your parents is not viable due to abuse, neglect, abandonment, or a similar basis under state law." Citing the Family Part's order expressly declining to make such findings, Immigration Services advised plaintiff and her child:

> Please provide a copy of a juvenile court order declaring that: 1) you are dependent on the court or under custody of an agency or department of the state, or an individual entity appointed by the court; 2) reunification with one or both of your parents is not viable due to abuse, neglect, abandonment, or a similar basis under state law; and 3) it would not be in your best interest to be returned to your or your parent's country of nationality or last habitual residence.

In response, plaintiff and her child filed a motion in the Family Part seeking an amendment to the previous order. After determining he was authorized to hear the motion by Rule 4:50, which sets forth circumstances

5

under which a court may relieve a party from a final judgment or order, the second Family Part judge denied the motion "because death alone does not equate to abandonment under New Jersey law." The judge found that the father's murder was not a willful forsaking of the child, a requisite for abandonment under New Jersey law. Plaintiff filed this appeal.

On appeal, plaintiff raises a single point:

> THE CHILD IN THIS CASE QUALIFIES FOR RELIEF ON THE GROUNDS OF ABANDONMENT OR OTHER SIMILAR BASIS UNDER NEW JERSEY LAW.

Our review of "[f]inal determinations made by the trial court sitting in a non-jury case [is] limited and well-established[.]" Seidman v. Clifton Sav. Bank, 205 N.J. 150, 169 (2011). The court's findings of fact are "binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). If a trial court's findings are not supported by adequate, substantial, credible evidence, and resolution of a critical issue requires a more complete record, a remand for the development of the record is appropriate. See In re Decision on CAA 47-2007, 209 N.J. 335, 337 (2009) (citing State v. Moore, 180 N.J. 459, 460 (2004)). A trial judge's "interpretation of the law and the legal consequences that flow from

6

established facts are not entitled to any special deference." <u>Manalapan Realty</u> <u>v. Twp. Comm.</u>, 140 N.J. 366, 378 (1995).

Here, the trial court's determination that death alone does not equate to abandonment under New Jersey does not settle the question of whether reunification with the father is not possible due to abuse, neglect, abandonment, <u>or a similar basis</u>. That question cannot be adequately answered based on the inadequate record before us. The record is devoid of any evidence surrounding the father's death, aside from the brief mention it was due to "pervasive gang violence." We do not know from the record before us, for example, whether the father was an active participant in a gang, engaged in illegal activity, and was perhaps killed during gang warfare, or whether he was an innocent victim. The details are important to the ultimate determination.

The term "abandonment" is statutorily defined:

> Abandonment of a child shall consist in any of the following acts by anyone having the custody or control of the child: (a) willfully forsaking a child; (b) failing to care for and keep the control and custody of a child so that the child shall be exposed to physical or moral risk without proper and sufficient protection; (c) failing to care for and keep the control and custody of a child so that the child shall be liable to be supported and maintained at the expense of the public, or by child caring societies or private persons not legally chargeable with its or their care, custody and control.

7

[N.J.S.A. 9:6-1.]

Evident from the statutory language is that the term abandonment is broader than willfully forsaking the child. Moreover, the findings a Family Court must make when considering an SIJ-related matter include whether reunification with the father is not possible due to abuse, neglect, abandonment, or a similar basis.

The phrase "or a similar basis" adds breadth to the inquiry. In that regard, N.J.S.A. 9:2-9, entitled "Parents or custodian of child unfit; action in Superior Court, Chancery Division, Family Part," provides:

> When the parents of any minor child or the parent or other person having the actual care and custody of any minor child are grossly immoral or unfit to be intrusted with the care and education of such child, or shall neglect to provide the child with proper protection, maintenance and education, or are of such vicious, careless or dissolute habits as to endanger the welfare of the child or make the child a public charge, or likely to become a public charge; or when the parents of any minor child are dead or cannot be found, and there is no other person, legal guardian or agency exercising custody over such child; it shall be lawful for any person interested in the welfare of such child to institute an action in the Superior Court, Chancery Division, Family Part, in the county where such minor child is residing, for the purpose of having the child brought before the court, and for the further relief provided by this chapter. The court may proceed in the action in a summary manner or otherwise.

A-3938-18T2

That the declaration, "death alone does not equate to abandonment," is too narrow a focus is illustrated by the hypothetical death of a father who commits suicide. Has he neglected or abandoned his children, willfully forsaken them, failed to care for and keep control and custody of them so that they shall be liable to be supported and maintained at the expense of the public, or by child caring societies or private persons not legally chargeable with their care, custody and control?

Obviously, the case before us does not involve suicide. Yet, if plaintiff's child's father knowingly and actively participated in gang activity marked by pervasive violence, particularly violent activity that exposed him to a high risk of serious injury or death, he may well have failed to care for and keep control and custody of the child so that the child shall be liable to be supported and maintained at the expense of the public; or perhaps failed to care for and keep the control and custody of the child so that the child shall be exposed to physical or moral risk without proper and sufficient protection; or, perhaps more significant, prevented reunification due to conduct having a similar basis.

These inquiries cannot be answered based on the record before us. That is not the fault of the Family Part judge, considering the record before him.

The record before us is scant, as we presume it was in the Family Part. Perhaps there is something in the trial record, not included in the appellate record, that demonstrates the father's homicide was nothing more than the profoundly tragic murder of an innocent man. However, given the conceivably unimaginable consequences that may flow from the Family Part fact-finding, we deem it appropriate to remand this matter so that the child has the opportunity to develop an appropriate record on which to make the case for SIJ status. Cf. In re Decision on CAA 47-2007, 209 N.J. at 337.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION